[No. 5040.   Decided February 29, 1904.]

THE STATE OF WASHINGTON, *on Relation of William Jensen et al., Plaintiff,* v. W. R. BELL, *Superior Judge etc., et al., Respondents.*[1]

JUDGMENT—EVIDENCE OF—JOURNAL ENTRY CONTROLLED BY SIGNED ORDER. Where the clerk's brief entry on the minutes, entered on the day that the court orally announces its decision, is inconsistent with the formal order of the court signed and filed a few days later, the latter controls, and must be considered the evidence of the real and final act of the court on the subject.

SAME — INJUNCTION — CONSTRUCTION — PROHIBITION   AGAINST THREATENED PUNISHMENT FOR CONTEMPT. Where a judge threat-

[1]Reported in 75 Pac. 641.

ens to punish as for contempt the sale of beer in no way enjoined by the terms of the signed judgment of the court, a writ of prohibition will issue preventing such action, although the clerk's journal entry of said judgment does enjoin such sale, and the judge claims that the journal entry correctly expressed the decision.

Application to the supreme court filed January 16, 1904, for a writ of prohibition against the threatened punishment of the relators for contempt in disobeying an order of the superior court for King county, Bell, J., entered January 8, 1904, enjoining the sale of certain beer.    Writ granted.

*Ballinger, Ronald & Battle* and *Vance & Mitchell,* for relators.

*G. M. Emory* and *Harold Preston,* for respondents.

HADLEY, J.—This is an original application in this court for a writ of prohibition directed to the superior court of King county and to the Honorable W. R. Bell, one of the judges thereof, and also to the Seattle Brewing & Malting Company, a corporation.    An alternative writ was issued, and return thereto was made.

The case presented here is as follows:    On the 8th day of January, 1904, a cause was pending in the superior court, wherein the Seattle Brewing & Malting Company, one of the respondents here, was plaintiff, and the relators here were defendants.    An application was made in that action by said plaintiff for the appointment of a receiver of a certain leasehold interest in controversy, and also for a temporary injunction against the said defendants.    On the said 8th day of January the respondent Bell, as said judge, having heard the aforesaid application, orally announced his decision thereon.    In the minutes of the court's proceedings, made by the clerk on that day, the following appears:

"Seattle Brewing & Malting Company, vs. Wm. Jensen et ux. No. 41455. Plffs. mo. for appointment of receiver granted. Court enjoins the defts. from selling any domestic beer except Rainier beer.—Supersedeas bond & bond on injunction fixed at $5,000. each. Ex. allowed."

Thereafter, on the 12th day of January, the said judge signed a formal order in the premises, and the same was spread upon the records of the court. Among other things contained in the order, the following appears touching the purchase and sale of beer other than Rainier beer:

"And It Is Hereby Further Ordered that the above defendants, William Jensen and Hulda Jensen, together with the attorneys, agents, servants and employes of each of said defendants, and all persons claiming under, by, or through them, subsequent to the making of this order by the court on January 8, 1904, be, and they hereby are, restrained and enjoined from purchasing from any person whomsoever, any beer, except beer imported from outside the limits of the United States of America, to be sold or offered for sale by said defendants, or either of them, in or about the carrying on of the saloon and restaurant business formerly and now operated in the premises referred to hereinabove;

"And it is further ordered that said defendants, William Jensen and Hulda Jensen, together with their attorneys, agents, servants and employes, and all persons claiming under or through them, be, and they hereby are, directed and commanded, with reference to purchases subsequent to January 8, 1904, by this order to purchase from said Seattle Brewing & Malting Company, all beer, except imported beer, as above defined, to be sold or offered for sale by said defendants, Jensen, or either of them, in carrying on said saloon and restaurant business in said premises."

It will be observed that, in the clerk's minute entry, the statement is made that the defendants are enjoined from selling any domestic beer except Rainier beer; but in the formal order, afterwards signed by the court, the injunction pertains only to purchases subsequent to January 8, 1904, and no prohibition is declared against selling such

other domestic beer as may have been purchased by the defendants prior to said date.

Acting under the terms of the formal order of the court, the relators here were about to sell such domestic beer as they had on hand, and which had previously been purchased from others than the respondent Seattle Brewing & Malting Company. At this juncture the respondent Bell, as judge aforesaid, threatened to punish these relators as for contempt, if they should proceed to make such sales; he claiming that the minute entry of the clerk correctly records the court's actual decision and order in the premises. The relators then applied to this court for a writ of prohibition to prevent such course on the part of said respondent, and also to prevent interference by the co-respondent with the making of sales by relators, as aforesaid.

The question presented is whether the brief minute entry of the clerk shall be held to be of higher character, as evidence of the court's actual order in the premises, than the written order which was later signed by the judge. We think it should not be so held. A formal written order is signed by a judge, presumably after deliberation and mature reflection upon the matters involved. Such an entry, we think, should be accorded greater weight, and should be received as more solemn evidence of the court's real intention, than a mere minute entry which may be hastily made, and the true import of which may be overlooked by the judge.

In this instance it appears to the respondent judge that the clerk's minute entry more correctly records his decision than his own signed order, but another time the situation may be reversed. He may then find that the clerk's minutes are inaccurate, and that his own deliberately signed order correctly states his decision. If we

should be thus driven from one to the other for evidence as to the actual order of the court, it is evident that frequent confusion might arise.    It is therefore manifest that there should be some standard in the record, to which reference may be made as the conclusive evidence of what has been actually decided.    We believe, when a written judgment or order has been signed by the court, it should be regarded as such standard.    We think it a safe rule to hold that, when the court signs a written order, it shall be considered the evidence of its real and final act touching the subject immediately under consideration.    Applying that rule here, the court's written order did not enjoin the relators from selling beer that was purchased by them prior to January 8, 1904, and which then remained unsold.    The respondents should therefore not interfere with relators in making such sales, in view of the fact that the court's deliberately signed and recorded order in the premises does not so prevent them.

Respondents cite *Coyle v. Seattle Electric Company,* 31 Wash. 181, 71 Pac. 733, as supporting the contention that the journal entery should be held to be controlling.    In that case the court avowedly sought, by a later entry, to correct what was supposed to be mere error of law inhering in a former one.    It was held that errors of law cannot be reviewed in that manner, but must be corrected on appeal, and that the original journal entry therefore became the judgment of the court.    No question arose in that case as to what the court actually intended.    It was clear that the court simply intended to reverse its view of the law as embodied in the former entry.    In the case at bar, however, the court undertakes to say, by its written judgment, what was actually decided, and it becomes a question whether that statement shall prevail over the clerk's minutes.

Respondents argue that the court may, by a *nunc pro tunc* order, correct the judgment entry and thus make it speak the truth, when by inadvertence or mistake it fails to state the actual judgment of the court. It is true it has been often held that the inherent power resides in the court to make such corrections in a proper case. 15 Enc. of Plead. & Prac., pp. 221 *et seq.*, and cases cited upon that subject. We do not understand that relators' counsel seriously dispute this principle. Such a record is, however, not before us now. Upon the contrary, the record shows that the Seattle Brewing & Malting Company applied to respondent Bell as judge to correct the judgment entry of January 12, 1904, on the ground that it did not speak the truth as to the court's actual decision. Said respondent, however, declined to make any correction, upon the theory, it seems, that the clerk's minute entry was the evidence of the actual decision and order of the court.

As the record comes before us, therefore, said respondent admittedly threatens to punish relators as for contempt, if they shall sell certain beer, the sale of which is in no way enjoined by the terms of the written and signed judgment of the court. For reasons already stated, the terms of that judgment must be held to import verity as to the court's decision as long as it remains unmodified and uncorrected.

It is ordered that the writ shall issue.

FULLERTON, C. J., and MOUNT, ANDERS, and DUNBAR, JJ., concur.