No. 8942.

FORKER *v.* HOPKINS ET AL.

WATER RIGHTS—*Adjudication Decree—Effect.* A decree adjudicating the priorities of the several ditches of a certain stream, and the volume to which each was entitled, *held* to control and overrule an express agreement of the parties to a contrary distribution, though reported and approved by the referee, and though the court approved and confirmed these findings in all respects; *held* that the officers in charge of the water service were bound by the decree.

Doubted if the evidence and referee's findings were admissible to vary or avoid the effect of the decree,—even as against third persons, having full notice.

*Error to Garfield District Court, Hon. John T. Shumate, Judge.*

Mr. THOMAS A. RUCKER, Mr. J. W. DOLLISON, for plaintiff in error.

Mr. ED. T. TAYLOR, Mr. CHAS. W. TAYLOR, for defendants in error, Hopkins and Hopkins.

Mr. C. W. DARROW, for defendants in error, Schleischer and Schleischer.

Mr. Justice Garrigues delivered the opinion of the court.

TILLIE FORKER, owner of the Forker and Gibson ditch, brought this suit against defendants in error, owners of the Landis Ditches Nos. 1 and 2, the O. K. Ditch, and the Chapman ditch. From the complaint, to which a demurer was sustained, it appears that in 1888, there were five constructed ditches diverting water for irrigation from Landis Creek, a stream in Garfield county furnishing but a small quantity of water, to-wit: Landis Ditches Nos. 1 and 2, owned by Dollie Landis; O. K. Ditch, owned by C. A. Kendall; Forker and Gibson Ditch owned by William Forker and one Gibson, and the Chapman Ditcher owned by Frank Chapman. These are the only ditches on the stream, and they are alleged to have appropriated all the water. May 12, 1888, the owners of the several ditches entered into the following agreement in writing, by which Kendall was to have one-fifth of the water of the creek for the O. K. Ditch, and the other ditches the remainder:

"The undersigned, Wm. Forker, Frank Chapman, Mrs. Dollie Landis, Mrs. Tillie Gibson and C. A. Kendall, parties of the first part, and C. A. Kendall, party of the second part, all of Spring Valley, Garfield County, Colo, have this 12th day of May, A. D., 1888, agreed upon and made the following settlement of their conflicting water rights and priorities, in and by these presents make, acknowledge and confirm the following conveyances in the premises: The said parties of the first part relinquish and convey unto the party of the second part, his heirs and assigns, one-fifth of the entire waters running in the natural water course of what is known as Landis Creek—said one-fifth to be taken for agricultural or other purposes, but only to be taken by the party of the second part between the first day of April and the last day of September of each and every year—and none of said waters to be taken by party

of the second part at any other than the last mentioned time or period of time.

The party of the second part relinquishes and conveys unto the parties of the first part, their heirs and assigns four-fifths of the waters of said creek during the period last mentioned—and all the waters of said creek during the balance of any and every year—that is to say, between the first day of October of each year and the last day of March of the succeeding year—the said waters to be used for agricultural or other purposes.

Whereas, the several parties or their grantors or privies in estate have heretofore filed in the office of the Clerk of said county their several statements and plats of ditch or water claims, claiming the waters of said creek for the purposes aforesaid, now the intent and object of this conveyance and grant, is to convey to the several parties all interests acquired by virtue of the said several statements according to the proportions and for the purposes herein stated.

As a part of this contract it is hereby stipulated that a disinterested person shall act as water commissioner, whenever his services are required by either party, who shall superintend the making and maintaining the headgates that may be required by any one of the several parties, and shall control the flow of water therein with the view or for the purpose of carrying out the intent of this instrument. If the parties cannot agree upon the person who shall act as such commissioner, he shall be selected by arbitration, as provided by law or the agreement of the parties. This covenant shall run with the lands of the several parties hereto.

It is agreed that the said commissioner shall without a day's delay in order that the crops for the present year may be saved, proceed to put in the several headgates mentioned and perform the other duties herein prescribed."

After this and prior to October 9, 1889, William Forker sold to one Graham, and Frank Chapman sold to Fred

Chapman, and on this date Landis, Kendall, Graham, Gibson and Fred Chapman, as owners of the various ditches, each filed a separate petition in the District Court asking for a statutory adjudication settling the appropriation and priority of the respective ditches to the use of water for irrigation, none of which, however, made any reference to the agreement. The court referred the matter to a referee to take testimony, and submit draft of findings and a decree. The agreement hereinbefore mentioned was introduced in evidence and the claimants each testified before the referee that they were willing to abide by the agreement and desired that a decree be entered in accordance therewith. The findings of the referee among other things stated that by the written agreement of the claimants, the priorities of the ditches are equal, and in the distribution of the water, the water commissioner should divide the water of the creek to the ditches accordingly. The findings were approved and confirmed, in all respects, by the court, and filed in the clerk's office with the evidence. Notwithstanding the court adopted the findings, it signed a decree which was entered of record, giving to each ditch the appropriation and priority to which it was entitled under the rule of priority, irrespective of the contract, as follows:

"Ditch No. 32A, claimant Dollie Landis, name, Landis Ditch No. 1, priority No. 36A, dated June 1, 1882, amount 1.6 cubic feet per second.

Ditch No. 32 B, claimant Dollie Landis, name Landis Ditch No. 2, priority No. 36B, date June 1, 1882, amount 1.6 cubic feet per second.

Ditch No. 72 A, claimant Clark A. Kendall, name O. K. Ditch, priority No. 91A, date May 15, 1884, amount 1.2 cubic feet per second.

Ditch No. 85A, claimant Forker and Gibson, name Forker and Gibson Ditch, priority No. 117A, date April 30, 1885, amount 1.5 cubic feet per second.

Ditch No. 103, claimant Fred Chapman, name Chapman

Ditch, priority No. 143, date April 25, 1886, amount 2 cubic feet per second."

After the decree was entered, Tillie Forker became the sole owner of the Forker and Gibson Ditch, water rights and lands thereunder, and defendants in error acquired by purchase. the other ditches, water rights and lands thereunder. The complaint alleges that each. and all of said defendants had at the time they acquired title to their lands and their ditches, and their right to the use of water from Landis Creek, complete notice and knowledge of the existence of said contract, and the terms and conditions thereof, and that their grantors had at all times acquiesced therein, and divided the waters of the creek in accordance with the terms of the contract; that in 1914 defendants violated the agreement and took all the waters of the stream in times of scarcity; but nowhere is it alleged that they violated the terms of the decree. The complaint prays for an injunction restraining defendants from interfering with plaintiff's use of the water of the creek as provided by the contract; that the contract be declared in full force, and binding upon the parties to the action; and for damages and costs.

1. The position of plaintiff seems to be that the validity of the contract, and not the validity of the decree is involved; that it was the duty of the court in the adjudication proceeding to enter a decree settling the appropriations of the ditches according to the priorities, just as was done, and leave the parties to adjust their rights among themselves under the prior agreement, and if they could not do so, that an action might be brought to enforce the agreement, notwithstanding the decree.

No doubt there is a conflict between the agreement, the findings and the decree, and the question in this suit is, which shall prevail. Which shall the water commissioner recognize in the distribution of the water to the ditches, the agreement and findings, or the decree? While it is true the adjudication conferred or created no new rights upon the parties, still, the decree is the final judgment

pronounced by the court, in the system of procedure enacted for the express purpose of determining and settling the appropriations and priorities of the various ditches on the stream, and it is *res judicata* as to the matters therein adjudicated and settled. It is doubtful whether the files in the clerk's office containing the evidence and findings of the referee could be admitted in evidence in this case for the purpose of impeaching, varying or avoiding the force and effect of the decree. If the decree entered is different from the decree pronounced, there is an appropriate way by which it may be made to speak the truth; in this proceeding we are bound by the decree as entered.

In *Bates v. Hall*, 44 Colo., at page 367, it is said:

"The general statutory decree was required to be entered in the judgment book of the court. As thus spread upon the records it is the best evidence of what was adjudicated in that proceeding. If it is different from the decree as reported by the referee, the presumption is the latter was modified by the court after the report was filed and before the entry was made. Upon the showing in this record, it is doubtful if 'Exhibit A.' was sufficiently identified to justify its admission as evidence at all. If, as claimed by respondents, it had been altered, the court should not have admitted it. If the decree as entered is different from the decree as actually pronounced, those making such contention should make the entry speak the truth. Until it is so corrected, it is binding on all the parties and prevails over the exhibit, even though the latter contains what the court decided."

Our constitution provides that the water of every natural stream within the state, is the property of the public, that is, of the People of the State, and it is dedicated to their use in that instrument. The State, through the legislature, has established a system of procedure by which the volume and priority of ditches on the streams may be judicially determined, and decrees entered accordingly. It also provides for the policing of the streams and the distribution of the water to the ditches entitled thereto, by statutory

officers appointed by the Governor for that purpose, who must distribute the water according to the decrees. Any private contract, the effect of which is to abrogate these laws, and deprive the water officials of their legal powers and duties to enforce the judicial water decrees, must of necessity be void. These irrigation decrees define the rights of the ditches to divert water from the streams, and become the law or distribution to be followed by the police officers in times of scarcity, when it is necessary to police the stream. In the case at bar, the decree is pleaded and an attempt made to avoid its enforcement by showing that its terms are not in accordance with the evidence, and the findings of the referee, which were adopted by the court. If it be true that the decree entered by the court is contrary to the evidence, and the findings of the referee confirmed and accepted by the court, the time to correct such error was then and there, and in the manner provided by law. Appropriate objections should have been made to the proposed decree, and if overruled, the complaining parties had their remedy by appeal to this court, where any alleged wrong, mistake or error, could have been reviewed. The decree was signed and entered in 1890 and has since been a matter of public record. Any interested party could ask, and the water officials would be bound to distribute the water in accordance with its terms, regardless of the contract or agreement entered into by the parties prior thereto, concerning the distribution of the water.

The judgment of the lower court is right and will be affirmed.

*Affirmed.*

Decision *en banc.*

Mr. Justice Scott not participating.