MERCHANTS' BANK OF ST. JOSEPH (FIRST NATIONAL BANK OF HANNIBAL et al., Interveners) v. CRYSLER et al.

(Circuit Court of Appeals, Eighth Circuit. April 3, 1895.)

No. 521.

EQUITY PRACTICE—FIXING COMPENSATION OF COUNSEL—NOTICE.

In the absence of any well-settled rule of practice or general order on the subject, motions to fix the compensation of receivers or their counsel should not be heard ex parte, but notice thereof should be given to all parties in interest.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

This was an application by the Merchants' Bank of St. Joseph, Mo., First National Bank of Hannibal, Mo., and John Vaughn, interveners in the suit of Ezra V. Snively, against the Loomis Coal Company, to vacate an order, made by the circuit court, allowing $5,000 to Charles S. Crysler, the attorney for the receiver appointed in the cause. The circuit court denied the motion. The interveners appeal.

C. A. Mosman (J. D. Strong, on the brief), for appellants.

James H. Harkless and E. J. Sherlock, filed brief for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an appeal from a final order in an equity case allowing Charles S. Crysler, one of the appellees, $5,000 as an attorney's fee, in addition to amounts previously allowed, for services by him rendered to the receiver appointed in said case. The allowance was made under the following circumstances: In the month of June, 1893, a bill was filed by Ezra V. Snively against the Loomis Coal Company to establish and to enforce a vendor's lien against the property of the coal company, and at the instance of the complainant, James A. Bovard, who has since died, was appointed receiver of all its property and effects, consisting of coal lands and mines, a store, and the usual tools and appliances for operating coal mines. By an order made in the case on June 30, 1893, the receiver was authorized to employ said Charles S. Crysler, the appellee, as his attorney, to represent the interests of the trust estate in the receiver's charge. Subsequently, on March 3, 1894, the present appellants, the Merchants' Bank of St. Joseph and the First National Bank of Hannibal, Mo., who held mortgages on the coal lands in question to the amount of about $40,000, includ-

ing interest, were allowed to intervene in the cause for the protection of their interests. On April 16, 1894, a decree was entered by consent of all parties in interest, which provided, in substance, that the property in the hands of the receiver should be sold at public sale by a commissioner appointed for that purpose, and that the proceeds of the sale should be distributed in the manner following: First, to the payment of all costs and expenses in the case, including compensation to the receiver and his attorney, and such indebtedness as the receiver had lawfully contracted while in control of the property; second, to the payment of the interveners' mortgages; third, to the payment of a judgment lien on a portion of the lands held by the appellant herein, John Vaughn; fourth, to the payment of the vendor's lien held by the complainant, Snively; the residue of the fund, if any, to be paid to the Loomis Coal Company. On the last day of the same term, to wit, on June 2, 1894, on an oral motion made by the receiver's attorney, without notice to the appellants, the circuit court allowed the receiver and his attorney each $5,000 as compensation, in addition to the compensation theretofore allowed to them, and at the same time it approved certain lengthy reports that had been filed by the receiver. Previous to making this order, and on December 5, 1893, the court had made an order allowing the receiver to pay to himself, out of the funds in his hands, $250 per month, as compensation, from the date of his appointment, and to pay to his attorney, said Charles S. Crysler, $100 per month from the date of his appointment, and to continue such payments to himself and his attorney until further order. The appellants herein made a motion on June 11, 1894, which was duly served on the appellees, to have the court vacate the final allowance in the sum of $5,000 that was made to said Crysler on June 2, 1894, alleging as a ground for said motion that the allowance was irregularly made without notice; that the interveners were interested in the amount of said allowance; and that they desired to be heard in relation thereto. This motion was denied by the circuit court on July 2, 1894, and the interveners prayed for an appeal, which was allowed.

The question does not arise upon this appeal as to whether the allowance made to the appellee Crysler was reasonable in amount or otherwise. No testimony was offered on that point. When the motion to vacate the allowance and to grant a rehearing was heard, the interveners insisted that the allowance was irregularly made; that their interests were vitally affected by the amount of the allowance; and that they were entitled to notice of the motion for additional compensation, and to an opportunity to be heard before a motion of that nature could be regularly tried and determined. The circuit court apparently took a different view, holding that it was a motion which could be heard by the court ex parte without notice. It accordingly denied a rehearing, and ordered the allowance to stand on such evidence as may have been offered when the allowance was made, which evidence, however, is not contained in the record. If the circuit court was right in the above view, then the order must be affirmed; otherwise it must be reversed. It is familiar learning

that all motions which may be made during the progress of an equity case are classified as "motions of course" or "special motions." To the former class belong all of those which are granted "without the court being called upon to investigate the truth of any allegation or suggestion upon which they are founded", to the latter class belong all of those applications addressed to the chancellor, which he may or may not grant in his discretion, and which usually involve an investigation of the facts or circumstances on which the application is predicated. Daniell, Ch. Pl. & Prac. (5th Ed.) 1592, 1593. Special motions are subdivided into two kinds: Those which may be granted ex parte, and those which require notice of their presentation and hearing. It is obvious that the motion with which we are concerned in the case in hand was not a motion grantable of course because it involved the production of evidence and a judicial inquiry into the nature and extent of the services that had been rendered by the appellees and the value thereof. The only point that admits of any controversy is whether it was a special motion of the kind that can regularly be heard ex parte. Mr. Daniels says that it is impossible to lay down any clear rule defining such special motions as may properly be heard ex parte, but that any application addressed to a chancellor concerning proceedings to be taken in a pending case, that is not regulated by some general order or by any clearly-defined rule of practice, must be made on notice. Daniel, Ch. Pl. & Prac. 1593. Also in Isnard v. Cazeaux, 1 Paige, 39, it was held that notice of every application for an order must be given to the opposite party, in case he has appeared, where the motion relates to any matter pending in court, or where a final order is sought, orders for time and those of a like nature alone excepted; otherwise the applicant or petitioner will only be entitled to an order nisi. See, also, Marshall v. Mellersh, 5 Beav. 496, and Hart v. Small, 4 Paige, 551.

It cannot be said, we think, that there is now in force in this circuit any general order or clearly-defined rule or practice which regulates the mode of procedure with reference to such motions as are now under consideration. Equity rule No. 6 declares that "all motions for rules or orders, and other proceedings which are not grantable of course, or without notice, shall, unless a different time be assigned by a judge of the court, be made on rule day, and entered in the order book, and shall be heard at the rule day next after that on which the motion was made. And if the adverse party, or his solicitor, shall not then appear, or shall not show good cause against the same, the motion may be heard by any judge of the court ex parte, and granted, as if not objected to, or refused, in his discretion." This rule clearly was not observed in the present case. But it may be conceded that the rule in question leaves it undetermined whether a motion by an attorney for an allowance against funds in the hands of a receiver or receivers, for services rendered in behalf of the estate in their hands, is an ex parte motion, which can properly be heard without notice. The general practice throughout this circuit has been, we believe (though it may have been departed from on some occasions) to make an order either

contemporaneously with the appointment of a receiver, or shortly thereafter, permitting him to retain out of the funds in his hands a certain sum monthly, on account of services, reserving the question of a further final allowance on account of services until the conclusion of the case, when the amount of such final or full compensation is usually fixed by the court after notice given, unless the amount of the allowance is agreed upon by all parties in interest. There is no usual method of procedure, so far as we have observed, with reference to making allowances in favor of attorneys who have been employed by the receiver with the sanction of the court. In the absence of any well-settled rule of practice or general order governing the subject, we entertain no doubt that applications for such orders ought to be accompanied with notice to all parties in interest, or to their solicitors of record, and that such applications ought not to be heard ex parte, unless the parties, when notified of the application, fail to appear. It is a well-known fact that large claims are often preferred against funds in the custody of receivers on account of legal services rendered in their behalf. The allowance of such claims depletes the trust fund, and frequently lessens the amount which the parties to the suit would otherwise be entitled to receive and would receive. The parties to the suit, therefore, have an interest in the amount of such allowances, and, according to well-established principles, they should have notice of applications for such allowances, and should be given an opportunity to defend. Any other practice might, and probably would, lead to great abuses.

Entertaining these views, we conclude that the application in question was one which could not properly be heard ex parte, and that the order appealed from was irregularly and erroneously entered. The order made by the circuit court on June 2, 1894, allowing the appellee $5,000 on account of services as aforesaid, is therefore vacated and annulled, and the case is remanded to the circuit court for further proceedings therein not inconsistent with this opinion.