RICHARDSON GRAIN SEPARATOR CO., Appellant, *v.* VALIER ELEVATOR CO. ET AL., RESPONDENTS.

(No. 5,135.)

(Submitted April 10, 1923. Decided May 12, 1923.)

[215 Pac. 237.]

*Mechanics' Liens—Filing of Claim—When Too Late—Sale of Material—When Completed.*

Equity—Findings—When Conclusive.
1. In an equity case the trial court's findings are conclusive unless the preponderance of the evidence is against them.

Mechanics' Liens—Material "Furnished" More Than Ninety Days Before Filing of Claim.
2. In an action to foreclose a materialman's lien on a grain elevator for machinery furnished for its equipment, evidence *held* to show that there was a completed sale of it more than ninety days prior to the day on which the claim of lien was filed, and that the contention of plaintiff that it was the intention of the parties that title should not pass until it had been shown that the machinery operated successfully after a thirty days' trial cannot be sustained.

Same—Sale of Material—When Completed.

3. Where an order for machinery to be shipped f. o. b. their place of shipment is accepted by the seller and they are so shipped "net 30 days 2%–10," the bill of lading or invoice being sent to the buyer, the sale is complete as of the day of shipment and the machinery is "furnished" within the meaning of the mechanics' lien statute (sec. 8340, Rev. Codes 1921), requiring the filing of claim of lien within ninety days after the material or machinery has been furnished.

*Appeal from District Court, Pondera County; John J. Greene, Judge.*

Action by the Richardson Grain Separator Company against the Valier Elevator Company and others. From judgment for defendants, plaintiff appeals. Affirmed.

*Messrs. Maddox & Church,* for Appellant; submitted a brief; *Mr. Fletcher Maddox* argued the cause orally.

The law is that when machinery is sold to be paid for when installed and accepted, the title remains in the vendor until the installation is completed and the machinery tried out and accepted. And if the title to the machinery in this case did so remain with the plaintiff until the grain machinery was installed and accepted, then the plaintiff did not furnish that machinery until it was installed, and the ninety-day period for filing a lien did not commence to run until about September 18. (See 35 Cyc. 685, notes 28, 29 and 30; *Pridmore* v. *Puffer Mfg. Co.,* 163 Fed. 497, 90 C. C. A. 42; *Salt Lake Hardware Co.* v. *Chainmann Mining & Electric Co.,* 137 Fed. 632; 27 Cyc. 141–143.)

*Messrs. Pray, Callaway & Toole,* for Respondent, submitted a brief; *Mr. Charles N. Pray* argued the cause orally.

Where it appears that the property has, with the knowledge of the vendor, been so attached to the realty of a third person as to become a part thereof, with no notice to the owner of the

---

3. Title of goods as vesting in consignee on delivery to carrier, see note in 61 Am. St. Rep. 481.

Delivery to carrier for shipment as delivery to purchaser, see notes in 20 Ann. Cas. 1027; Ann. Cas. 1916A, 1046.

realty of the reservation of the title in the vendor, *a fortiori* such vendor may not subject the property of the third person to a lien which he would not have otherwise had were it not for the secret reservation of title. (*Puzzle Mining etc. Co.* v. *Morse Bros. Mach. etc. Co.*, 24 Colo. App. 74, 131 Pac. 791; *Camp* v. *Charles Thatcher Co.*, 75 Conn. 165, 52 Atl. 953; *Thatcher* v. *Union Scales Co.*, 74 Iowa, 117, 37 N. W. 102; *Montesano Lumber etc. Co.* v. *Portland Iron Works*, 78 Or. 53, 152 Pac. 244.) So, also, where a vendor delivers property to a contractor under a conditional sale agreement, with knowledge of the fact that the property is to be attached to the realty of a third person, and the property is so attached and becomes a part thereof before the owner has notice of the reservation of title, the vendor is not entitled to recover possession of the property or the value thereof as against the owner. (*Peck-Hammond Co.* v. *Walnut Ridge School Dist.*, 93 Ark. 77, 123 S. W. 771; *American Process Co.* v. *Florida White Pressed Brick Co.*, 56 Fla. 116, 16 Ann. Cas. 1054, 47 South. 942; *J. S. Schofield's Sons Co.* v. *Woodward*, 137 Ga. 65, 72 S. E. 509; *Simpson Brick-Press Co.* v. *Wormley*, 166 Ill. 383, 46 N. E. 976; *Jenks* v. *Colwell*, 66 Mich. 420, 11 Am. St. Rep. 502, 33 N. W. 528; *Milicie* v. *Pearson*, 97 N. Y. Supp. 431, 110 App. Div. 770; *Jacobs* v. *Reinstein*, 117 N. Y. Supp. 823, 133 App. Div. 416; *Mechanics' etc. Bank* v. *Bergen Heights Realty Corp.*, 122 N. Y. Supp. 33, 137 App. Div. 45; *Albert* v. *R. Lewis Steiner Mfg. Co.*, 86 N. Y. Supp. 162, 42 Misc. Rep. 522; *Allis-Chalmers Co.* v. *Atlantic*, 164 Iowa, 8, Ann. Cas. 1916D, 910, 52 L. R. A. (n. s.) 561, 144 N. W. 346.)

HONORABLE GEORGE A. HORKAN, District Judge, sitting in place of MR. CHIEF JUSTICE CALLAWAY, disqualified, delivered the opinion of the court.

This is an action for the foreclosure of a materialman's lien. It originated in the district court of Teton county. The plaintiff and appellant herein, Richardson Grain Separator Company, is a Minnesota corporation, with its headquarters at

Minneapolis, Minnesota. For convenience it shall be referred to as the Separator Company. The defendant Valier Elevator Company is a Montana corporation engaged in the elevator business at Valier, Montana. In this opinion we will designate it as the Elevator Company. The defendant Globe Construction Company is likewise a Montana corporation whose principal business seems to be the construction of grain elevators. We shall refer to it as the Construction Company.

The complaint is in the usual form for the foreclosure of a materialman's lien, except as to paragraph XI thereof, which reads thus: ''That the aforesaid machinery, material and appliances described in said lien account were sold by the plaintiff to the defendant Globe Construction Company, under a contract by which this plaintiff undertook and agreed to install said machinery in the elevator building of the defendant Valier Elevator Company, and that the agreed price should not become due and payable, nor the title to said machinery pass, until said machinery had been received, installed and in successful operation. That said machinery was installed and in successful operation in the elevator building of the defendant Valier Elevator Company, and was accepted and its operation approved by the defendant Globe Construction Company, on or about the 20th day of September, 1917.''

The complaint alleges that the machinery was furnished between September 1, 1917, and October 1, 1917, and that the claim for lien was filed with the county clerk on November 22, 1917, and within ninety days from the furnishing and installing of the machinery and material described therein.

The Elevator Company answered denying that the machinery was furnished between September 1, 1917, and October 1, 1917, or that the claim for lien was filed within ninety days from and after the time when the machinery was sold and delivered. As an affirmative defense it is alleged, in effect, that some time prior to July 6, 1917, the Construction Company and the Elevator Company entered into a contract whereby the former agreed to build and equip with necessary machinery and appli-

ances a grain elevator building on the tract of land described in the complaint; that the Separator Company on said day had full and complete knowledge of said contract; that on July 7, 1917, at the request of the Construction Company, the Separator Company sold and delivered to the former at Minneapolis, Minnesota, the machinery and appliances heretofore referred to; that the same were immediately shipped to the Construction Company and were actually received by the latter at Valier, Montana, on July 19, 1917; that at all times the Separator Company well knew that said machinery and appliances were to be installed in and attached to said elevator building and were to become a permanent fixture therein; that within ninety days after the said machinery and appliances were sold and delivered by the Separator Company to the Construction Company, and long prior to the filing of the Separator Company's pretended lien, the said machinery and appliances were installed in the elevator building by the Construction Company and became and are permanent fixtures therein; that the Elevator Company knew that said machinery and appliances were received by the Construction Company on July 19, 1917; that the Elevator Company never had any notice or knowledge from the Separator Company, or otherwise, that the Construction Company had not been paid for said machinery and appliances until the Separator Company filed its pretended lien, and never had any notice or knowledge of the alleged agreement between the Separator Company and the Construction Company "that the agreed price should not become due or payable, nor the title to said machinery pass until said machinery had been received, installed and in successful operation," or any other agreement or understanding between the Separator Company and the Construction Company, until receipt of the copy of the Separator Company's complaint. Other allegations are contained in the answer, but we deem it unnecessary to refer to them.

The Separator Company replied, putting in issue all new matter alleged in the answer of the Elevator Company. The

cause was tried to the court without a jury. Certain findings of fact and conclusions of law were made by the court, upon which a final decree and judgment was entered in favor of the Elevator Company, holding the claim of lien invalid and dismissing the complaint as to said company. From that judgment plaintiff Separator Company appealed. There are five specifications of error, none of which it is necessary to set out in detail.

The main question to be determined in this case is: Was the **[1]** claim for lien filed with the county clerk within ninety days after the machinery and appliances were furnished by the Separator Company to the Construction Company? (Rev. Codes 1921, sec. 8340.) The trial court in its findings answered this question in the negative, and this we must accept under the well-established rule of this court, unless it is opposed to the preponderance of the evidence. (*Willis* v. *Pilot Butte Mining Co.*, 58 Mont. 26, 190 Pac. 124; *Loud* v. *Hanson*, 53 Mont. 445, 164 Pac. 544; *Street* v. *Delta Mining Co.*, 42 Mont. 371, 112 Pac. 701; *Kelly* v. *Granite Bi-Metallic C. M. Co.*, 41 Mont. 1, 108 Pac. 785; *Bordeaux* v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6.)

A careful examination of the record leads us to believe the **[2]** conclusion reached by the trial court should not be disturbed. We are compelled to analyze the evidence briefly. It shows that on June 16, 1917, a written contract was entered into between the Elevator Company and the Construction Company whereby the latter agreed to build and equip with necessary machinery and appliances an elevator at Valier, Montana, for the former; that the contract provided the machinery to be installed in said elevator should be the exact machinery which was later furnished by the Separator Company; that the Separator Company had immediate notice and knowledge of the terms of the contract; that on June 4, 1917, the Construction Company entered into negotiations with the Separator Company for the purchase of the machinery in question by giving to one R. J. Carey, the assistant manager of the Sepa-

rator Company, a requisition or order for said machinery, which reads as follows:

"Globe Construction Company, Great Falls, Montana.
                    "Order No. 143.
"To Richardson Grain Separator Co., Minneapolis, Minn.:
                    "Great Falls, Mont., June 4, 1917.
"Terms: ——.
"Ship via. ——.

| "Quantity. | Description. | Price Per. |
|---|---|---|
| 1 | No. 3 (D) Simplex grain cleaner................ | $ 685 00 |
| 1 | No. 5–48" Richardson wheat and oat separator.. | 700 00 |
| 1 | 20" Richardson attrition mill, with auto feed and scalper ............................... | 260 00 |
| 1 | gang of sieves for flax cleaning................ | 37 00 |
| 1 | scalping sieve, No. 32/64, round perforations..... | 5 50 |
| 2 | single sieves, No. 18/64, round perforations..... | 11 00 |

                                        $1,698 50

"Less 10%
"Ship the above f. o. b. G. N. to Valier, Mont.
                    "GLOBE CONSTRUCTION COMPANY,
                         "Per J. C. HOSCH."

This requisition or order was accepted by the Separator Company, and on July 6, 1917, it loaded the machinery at Minneapolis, Minn., f. o. b., and at the same time sent a bill of lading or invoice to the Construction Company which reads as follows:

            "Richardson Grain Separator Company,
                "Minneapolis.      Winnipeg.
"The Richardson Oat Separators and Screening Machines.
        "Elevator and Flour Mill Sizes a Specialty.
                        "Minneapolis, Minn., July 6, 1917.
"Sold Globe Construction Co., Great Falls, Mont.
"Terms: Net 30 days, 2% 10.
1–70" D Simplex .................... $ 685 00
1 flax gang received Jul. 9, 1917........  37 00

Globe Construction Co.

| | | | |
|---|---|---|---|
| 1 scalping sieve ...................... | 5 | 50 | |
| 2 single sieves ...................... | 11 | 00 | |
| 1 No. 5 48″ Richardson oat Sep. No. 3104 | 700 | 00 | |
| 1 20″ Richardson BB Att. mill and scalper | 260 | 00 | |
| | $1,698 | 50 | |
| 10%............. | 169 | 85 | $1,528 65 |

"Shipped to Valier, Mont.

"Entered General Journal 45.

"Entered Cost Journal 21.

"Route Gr. Northern Mat.

"No. 36.

"Your order number Req. 143."

The machinery arrived at Valier, Montana, on either the 17th, 18th or 19th of July, 1917, and was immediately unloaded by the Construction Company and placed in a warehouse, where it remained until it was removed to the elevator of the Elevator Company, which removal took place at a date not later than August 17, 1917.

Some evidence was presented by the Separator Company attempting to show a general oral agreement between it and the Construction Company prior to, but not contemporaneously with, the giving of the written order or requisition heretofore referred to, that the title to the machinery should not pass until the machinery was accepted, and that there was not a sale of said machinery until it was placed in the elevator, given a thirty days' trial, and accepted as satisfactory. This evidence was admitted over the objection of the Elevator Company. Assuming, but not deciding, that this evidence was properly admitted, it is far from being convincing, for the record shows that at the time the contract was entered into between the Construction Company and the Elevator Company for the construction of the elevator a conversation occurred between the officers of the Elevator Company and one J. C. Hosch, the secretary and treasurer, and representative of the

Construction Company, in which he informed three officers of the Elevator Company that his company could not purchase the machinery subject to trial. This evidence was not disputed. Further, the evidence is conclusive that neither the Separator Company nor the Construction Company gave the machinery a thirty days' trial. When we consider this testimony in connection with the specific language used in the written requisition or order herein set out, directing that the machinery and appliances be shipped f. o. b., G. N. to Valier, Montana, and the bill of lading or invoice forwarded to and received by the Construction Company containing the plain, certain and well-known business term "net 30 days 2%–10," we are led to the logical conclusion that the oral agreement in regard to the terms of sale of the machinery was an afterthought rather than a forethought.

A careful analysis of all the record in this case leads to the [3] conclusion, and it is so held, that when the order or requisition of June 4, 1917, was received by the Separator Company and accepted and the machinery and appliances therein specified were shipped f. o. b. Minneapolis, Minnesota, July 6, 1917, there was a completed sale of said machinery and appliances (*Clark* v. *Lindsay & Co.*, 19 Mont. 1, 61 Am. St. Rep. 479, 47 Pac. 102), and that said machinery and appliances were on July 6, 1917, furnished by the Separator Company to the Construction Company within the meaning of section 8340 of the Revised Codes of 1921. (*McEwen* v. *Union Bank & Trust Co.*, 35 Mont. 470, 90 Pac. 359.)

The machinery and appliances having thus been furnished more than ninety days prior to November 22, 1917, when the claim for a lien was filed, the mechanic's lien law was not complied with and the lien did not attach. The lower court was correct in awarding judgment to the defendant Elevator Company. The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.