HEATER, PLAINTIFF, v. BOSTON MONTANA CORPORA-
TION ET AL., DEFENDANTS.

MUFFLY, RECEIVER, APPELLANT, v. GOODWIN, RESPONDENT.

(No. 5,855.)

(Submitted February 10, 1926.   Decided March 6, 1926.)

[244 Pac. 501.]

*Receivers—Fixing Compensation—Absence of Notice to Par-
ties—Collateral Attack—Attorneys' Fees and Expenses—
Burden of Proof.*

Receivers — Fixing Compensation Without Notice to Parties — Order
Void—Collateral Attack.
1.  An order fixing the compensation of a receiver, when made
without notice to the parties in interest, is void and may be at
tacked collaterally.

Equity—Findings—When Conclusive.
2.  In an equitable proceeding the findings of the trial court will
not be disturbed on appeal unless the evidence clearly preponder-
ates against them.

Receivers — Compensation — Elements Entering into Consideration of
Subject.
3.  In fixing the compensation of a receiver the court may properly
take into consideration the value of the property in controversy,
the qualifications of the person appointed receiver, the time, labor
and skill needed or expended in the proper performance of his
duties and their fair value measured by common business standards.

Same—Compensation—What Deemed Insufficient Under Evidence.
4.  Where mining, railroad and other property involved in a re-
ceivership proceeding was of the value of millions of dollars, and
the receiver, a man of wide business experience, was required to
give bond in the sum of $100,000 for the faithful performance of
his duties, had not sought the appointment and only accepted it
after urgent solicitations, devoted his entire time to the manage-
ment of the properties neglecting his own business affairs, and of
whose conduct of the properties no complaint was made, an al-
lowance of $1,000 per month as compensation *held* reasonable, and
a finding that $500 a month was sufficient *held* not supported by a
preponderance of the evidence.

Same—Living Expenses—Not Proper Item for Allowance.
5.  Expense incurred by a receiver for room rent at a hotel as
part of his living expenses, *held* not a proper item chargeable to
the properties of the trust.

4.  See 23 R. C. L. 137.
5.  What constitute necessary expenses of receivership, see note in
Ann. Cas. 1918D, 923.

Same—Attorneys' Fee—When Allowance Conclusive.

6. Where no testimony was introduced on the hearing of a receiver's account on the question whether attorneys' fees claimed by the receiver for services rendered were reasonable or not, the allowance of the item will not be disturbed on appeal.

Same—Incidental Expenses—Necessity—Burden of Proof on Receiver.

7. The burden of showing necessity for a transcript of evidence introduced at a hearing in the receivership proceeding was upon the receiver who asked for allowance of the amount expended for that purpose; in the absence of such a showing, disallowance of the item was proper.

---

[1]   Receivers, 34 Cyc., p. 473, n. 58.
[2]   Appeal and Error, 4 C. J., sec. 2870, p. 901, n. 2. Receivers, 34 Cyc., p. 477, n. 95.
[3]   Receivers, 34 Cyc., p. 472, n. 35, 38, 39, 40, 47; p. 473, n. 48.
[4]   Appeal and Error, 4 C. J., sec. 2867, p. 897, n. 81. Receivers, 34 Cyc., p. 470, n. 28; p. 471, n. 32; p. 473, n. 50, 51 New.
[5]   Receivers, 34 Cyc., p. 461, n. 63.
[6]   Receivers, 34 Cyc., p. 466, n. 92.
[7]   Receivers, 34 Cyc., p. 461, n. 63.

*Appeal from District Court, Beaverhead County; Lyman H. Bennett, Judge.*

ACTION by Otto L. Heater against the Boston Montana Corporation and others, in which Charles S. Muffly was appointed receiver. Perry B. Goodwin, purchaser of the properties involved, filed objections to certain items in the account of the receiver. From the judgment entered, the receiver appeals. Modified and affirmed.

*Messrs. Walsh & Nagle* and *Mr. Henry C. Smith,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. J. A. Walsh* and *Mr. Smith* argued the cause orally.

Citing on the question of the receiver's compensation: Tardy-Smith on Receivers, p. 1739; Alderson on Receivers, secs. 625, 628; *Hickey* v. *Parrot Silver & Copper Co.,* 32 Mont. 143, 156, 108 Am. St. Rep. 510, 79 Pac. 698, 701; *Butte Miner Co.* v. *M. J. Connell Co.,* 54 Mont. 78, 166 Pac. 296; *Burroughs* v. *Toxoway Co.,* 185 Fed. 435, 107 C. C. A. 505; *United States* v. *Church of Latter Day Saints,* 6 Utah, 9, 21 Pac. 503–524;

*Cowdrey* v. *Railroad Co.,* Fed. Cas. No. 3293 (1 Woods, 331), vol. 6, p. 660.

*Messrs. Kremer, Sanders & Kremer, Mr. Franklin King* and *Mr. Linus Coggan,* for Respondent, submitted a brief; *Mr. Louis P. Sanders* argued the cause orally.

"The allowance of compensation to a receiver rests in the discretion of the court, and an allowance will not be disturbed unless plainly unwarranted." (*Campbell* v. *Charleston St. Ry. Co.,* 73 W. Va. 493, 80 S. E. 809; *Wilder* v. *Co-operative Distilling & Rectifying Co.,* 136 Ill. App. 359; *Herrick* v. *Davidson,* 164 Iowa, 462, 145 N. W. 907; *Talbot* v. *Tyson,* 147 N. C. 273, 60 S. E. 1125; *Sullivan Timber Co.* v. *Black,* 159 Ala. 570, 48 South. 870.) "A court should not act on the allowance of fees to a receiver without evidence, although it may take into consideration its own personal knowledge." (*In re Magner,* 173 Iowa, 199, 155 N. W. 317; *Wroten* v. *Robbins,* 103 Wash. 393, 174 Pac. 968.) "While due consideration is given the affidavits of attorneys as to the fees to be allowed to an attorney, the court is not bound thereby, but will review the extent of the services and fix what it thinks is a reasonable fee under all the facts." (*Stockholders of First State Bank* v. *First State Bank's Receiver,* 159 Ky. 484, 167 S. W. 678.)

From the foregoing citations, it is clear the presumption is so strong that the courts do not abuse their judicial discretion that such abuse must clearly and manifestly be made to appear on appeal. (See, also, generally, *Schwartz* v. *Keystone Oil Co.,* 153 Pa. 283, 25 Atl. 1018; *Penner* v. *Drilling Development Co.,* 293 Fed. 766; *Grant* v. *Bryant,* 101 Mass. 567; *Sullivan Timber Co.* v. *Black,* 159 Ala. 570, 48 South. 870; *Forrester & MacGinniss* v. *Boston & M. Consol. Copper & S. Min. Co.,* 30 Mont. 181, 76 Pac. 2; *Hickey* v. *Parrot Silver & Copper Co.,* 32 Mont. 143, 108 Am. St. Rep. 510, 79 Pac. 698, 701; *Forrester & MacGinniss* v. *Boston & Consol. Copper*

*& S. Min. Co.*, 32 Mont. 240, 241, 79 Pac. 1061; *Butte Miner Co.* v. *M. J. Connell Co.*, 54 Mont. 78, 166 Pac. 296; *Steele* v. *Rupresht*, 147 Ill. App. 646; *Independent Steel & Wire Co.* v. *New Mexico Cent. Ry. Co.*, 25 N. M. 160, 78 Pac. 842.)

The court was without power to make the order of September 13, 1924, fixing the compensation of the receiver at $1,000 monthly, in the absence of parties in interest. There is no dissent among the authorities that such parties were entitled to notice. (*Ruggles* v. *Patton*, 143 Fed. 312, 314, 74 C. C. A. 450; 34 Cyc., p. 743; *Bank* v. *Crysler*, 67 Fed. 388, 14 C. C. A. 444; *In re Michigan Cent. R. R. Co.*, 124 Fed. 727, 731, 59 C. C. A. 643; *In re Magner*, 173 Iowa, 299, 155 N. W. 317; *Rost* v. *International Elec. Co.* (Ind.), 146 N. E. 821; *Colkett* v. *Hammond*, 101 Wash. 416, 172 Pac. 548; *Pacific Coast Co.* v. *Lak-A-Taka Co.*, 92 Wash. 203, 158 Pac. 1003.)

An attorney, a receiver or any other person acting in any other capacity and performing services for which reasonable compensation is claimed is subject to the same rule as to establishing such claims by sufficient competent proof as is imposed by law upon a merchant or any other person who seeks like recovery. (*Hughes* v. *Dundee Mortgage & Trust Co.*, 21 Fed. 116; *Vilas* v. *Downer*, 21 Vt. 419; *Stow* v. *Hamlin*, 11 How. Pr. (N. Y.) 452; *Atkinson* v. *Dailey*, 107 Ind. 117, 7 N. E. 902.)

MR. JUSTICE STARK delivered the opinion of the court.

On March 22, 1923, an order was duly made in this action appointing Charles S. Muffly and I. H. Brand receivers of all of the properties of the defendant corporations. Under this order Mr. Muffly was given actual charge, management and control of all the properties of the several corporations located in this state, while Mr. Brand was given control of the business affairs of the corporations which centered in Boston, Massachusetts. Since the only matters raised on this ap-

peal relate to the accounts of Receiver Muffly, we eliminate Brand from further mention, and shall refer to the former alone as the receiver.

The properties located in this state, and which passed into the hands of the receiver, consisted of a group of about fifty-five unpatented mining claims, with a large amount of development work done upon them, a 750-ton flotation mill, adjacent to the mining properties and used in connection therewith, situated in Beaverhead county; also a narrow-gauge railroad about forty miles in length extending from Divide Station to the mining properties. There were mortgages upon these properties, given to secure the sum of several million dollars, which were foreclosed in the action, the decrees of foreclosure providing for sales of the various properties by a special master in chancery, and, further, that the purchaser or purchasers, in addition to the sums bid at the sales, should pay off the unpaid obligations which had been incurred by the receiver before the delivery of the property to the purchasers.

Perry B. Goodwin became the purchaser of all the properties, and thereby assumed responsibility for payment of the unpaid obligations of the receivership. After the sales of the property and the confirmation thereof, and on January 19, 1925, the receiver filed a report and account of his doings, in which he set forth claims for his own expenses and compensation, and also claims for allowances to be paid to his attorneys. The purchaser, Goodwin, filed objections to certain of these items, and a partial hearing was had upon them on March 11, 1925, and the further hearing thereon continued to June 15, 1925. On March 11 the receiver filed a supplemental report bringing his accounts down to that date, and on June 15 a second supplemental report was filed bringing the accounts down to that time. Objections were duly filed to these supplemental reports, and the matter submitted to the court for determination on the last-mentioned date. As finally submitted, the items to which objections were made were as follows:

(1) Claim of the receiver for compensation at the rate of $1,000 per month from the date of his appointment.

(2) Claim of receiver as part of his expenses for rent of room at the Thornton Hotel, in Butte, from March 22, 1923, to April 30, 1925, at $3.50 per day, $2,277.20.

(3) Claim for allowance for payment of receiver's counsel, as follows: J. A. Walsh, for services to January 19, 1925, $3,500; J. A. Walsh, for services subsequent to January 19, 1925, $1,500; J. A. Walsh, for services at hearing on March 11, 1925, $350; Howard Toole, services at hearing on March 11, 1925, $350; Howard Toole, expenses, $11.24.

(4) F. B. Layhe, $48.90.

Upon these contested items the court made its order: (1) Allowing the receiver compensation at the rate of $500 per month, a total of $13,382.95, from which was deducted the sum of $6,000 theretofore received by him on that account, leaving a balance of $7,382.95. (2) Reducing the claim for room rent at the Thornton Hotel to the sum of $1,012. (3) Allowing receiver as compensation to his counsel the following sums: J. A. Walsh, $3,500; J. A. Walsh and Howard Toole jointly, $450; expenses of Howard Toole, $11.24. (4) Disallowing *in toto* the F. B. Layhe item of $48.90.

All the allowed items were ordered to be paid out of the funds in the hands of the special master derived from the sale of the property. Judgment was entered in accordance with the foregoing determinations, from which the receiver has appealed, and he assigns as error the action of the court in reducing his claims for compensation for himself and his attorneys, reducing his claim for expense of the room at the Thornton Hotel, and disallowing the Layhe item of $48.90.

1. At the hearings upon these contested items it appeared [1] that on September 13, 1924, Judge Joseph C. Smith, one of the judges of said court who was then presiding in matters connected with this receivership, made an order fixing the compensation of the receiver at the sum of $1,000 per month. The

minutes of the court show that shortly thereafter Judge Smith, deeming himself disqualified from further participation in the case, called in Judge Lyman H. Bennett, the other judge of said court, to assume jurisdiction of further proceedings therein.

To sustain their contention that the court erred in reducing the claim of the receiver for compensation at the rate of $1,000 per month, counsel for appellant in part rely upon the above-mentioned order made by Judge Smith, fixing his compensation at that amount, and say that this order is conclusive against a collateral attack thereon such as is here made, citing the case of *Burke* v. *Inter-State S. & L. Assn.*, 25 Mont. 315, 87 Am. St. Rep. 416, 64 Pac. 879. On the other hand, respondent contends that this order is void for the reason that it was made by the court of its own motion and without notice to any party in interest.

The whole record of the case, including all the original pleadings and documents filed therein, has been brought up for our examination, and from an inspection thereof it appears respondent's contention that the order referred to was made by Judge Smith without notice to any party to the suit is correct. While this order did not assume to fix and determine the ultimate rights of any of the parties to the proceeding, by directing which of them should be held liable for the payment of the amount of the allowance, it was an intermediate proceeding, one of the successive steps which might have resulted in a final judgment against the properties in the hands of the receiver, or against some of the parties to the suit (*State ex rel. Heinze* v. *District Court;* 28 Mont. 227, 72 Pac. 613); thereby having had the effect of taking from them a portion of the property, or the proceeds thereof, to which they would otherwise have been entitled. Such a judgment would have deprived them of a sum due, as much as would a judgment directing that they pay over that amount, and all this without having been given an opportunity to appear and contest the claim.

In the case of *Ruggles* v. *Patton,* 143 Fed. 312, 74 C. C. A. 450, it is said: "Nothing is better settled than that an allow-

ance to a receiver by way of compensation for his services is not subject to the arbitrary determination of the court, but should be made upon a hearing at which the parties interested have an opportunity of contesting the claim. * * * If reviewable upon appeal, it follows that the order is erroneous, if made without notice.''

The rule announced in that case is supported by all the authorities which have come to our attention, and among them we cite *Bank* v. *Crysler,* 67 Fed. 388, 14 C. C. A. 444; *In re Michigan Cent. R. R. Co.,* 124 Fed. 727, 59 C. C. A. 643; *In re Magner,* 173 Iowa, 299, 155 N. W. 317; *Colkett* v. *Hammond,* 101 Wash. 416, 172 Pac. 548. In the case last cited it was held that an order fixing the compensation of a receiver and his attorneys, purporting to be final, made *ex parte* and without notice to anyone interested other than the receiver and his attorneys, was void.

In face of the record presented to us, which shows that in fact the order in question was made without notice, we hold it was void. The order being void, no right could be predicated thereon, and it is subject to collateral attack. (*Crawford* v. *Pierse,* 56 Mont. 371, 185 Pac. 315; *Henderson* v. *Daniels,* 62 Mont. 363, 205 Pac. 964.) Therefore, to determine whether the court erred in fixing the amount of the receiver's compensation, resort must be had to the evidence given at the hearing, without reference to the order above mentioned.

In the consideration of this matter we are governed by the rule [2] frequently announced by this court that in an equitable proceeding the findings of the trial court will not be disturbed unless it appears that the evidence clearly preponderates against them. (*State Bank* v. *McIntyre,* 71 Mont. 186, 228 Pac. 618; *Hartnett* v. *Sterling,* 67 Mont. 46, 214 Pac. 330; *Richardson* v. *Valier Elevator Co.,* 67 Mont. 227, 215 Pac. 237; *Wood* v. *Robbins,* 67 Mont. 409, 215 Pac. 1101; *Sanger* v. *Huguenel,* 65 Mont. 236, 211 Pac. 349.) Tested by this rule, can it be said that the evidence clearly preponderates against

the determination of the court that the compensation of the receiver should be reduced from the amount claimed by him to a sum equivalent to one-half thereof, and that the latter amount was the reasonable value of his services?

In the case of *Hickey* v. *Parrot etc. Co.*, 32 Mont. 143, 156, [3]    108 Am. St. Rep. 510, 79 Pac. 698, 701, it is said: "The considerations that should be controlling with the court in fixing compensation are the value of the property in controversy; the practical benefits derived from the receiver's efforts and attention; time, labor, and skill needed or expended in the proper performance of the duties imposed, and their fair value, measured by the common business standards."

And in Alderson on Receivers, section 625, page 855, the author says: "The court may properly consider the qualifications of the person appointed receiver, the amount of time which a proper performance of the duties of the position will require and the manner in which the service is performed."

The testimony taken at the hearing disclosed that the properties of which the receiver assumed charge and control [4]    were of great magnitude. While there was no direct testimony as to their value, it was shown that prior to March, 1922, there had been expended thereon in development of the mines and construction of the mill more than $5,000,000, and that the interested companies had succeeded in floating bonds, secured by mortgages upon these properties, amounting to many millions of dollars. It also appeared that the judge presiding at the hearing deemed the property of sufficient value to justify him in directing the master in chancery, who conducted the sales of the properties, to pay out of the proceeds thereof to the counsel who conducted the foreclosure proceedings the sum of $17,500 as a reasonable compensation for their services in that behalf.

At the time the receiver was appointed, the mines were in operation with upward of 100 men at work. The receiver was confronted with the fact situation that many of these men had not been paid their wages for a considerable period of

time, and no money was available for the payment of their claims. To reduce the expenses and conserve the properties intact, it was necessary to reduce the number of employees and still retain a sufficient number to prevent deterioration of the mines, mill and railroad properties. In order to retain these men he found it necessary at times to pledge his personal credit. During a period of many months he devoted his entire time and energy to the duties of the receivership, attended to a considerable amount of litigation, looked after the representation of the unpatented mining claims, and by his efforts managed the affairs of the companies and conserved their properties in such a way that at the end of his stewardship he turned them over to the purchaser in good condition, ready for immediate operation. No complaint is made of his conduct of these affairs. In so far as the care and preservation of the property is concerned, it is not suggested that he did anything which he ought not to have done or left undone anything which he should have done. The record showed that Muffly was a man of wide and varied experience in the handling of men and mines; that he was president of the Montana Mining Association, which is composed of some 1,900 men interested in mining in this state; that he has been actively engaged in the mining industry on his own account a greater portion of the time since 1886. He did not seek the position of receiver, and only accepted the appointment after urgent solicitation. In order to perform his duties he was obliged to, and did, abandon mining projects of his own which he stated would have paid him larger returns than the salary which he asked to be allowed him as receiver. For the faithful performance of his duties he was required to furnish a bond in the sum of $100,000.

At the hearing, to support his contentions, the objector produced two witnesses, one of whom valued such services as the receiver performed at $250 per month, basing this estimate on the fact that the average mine foreman in Butte received

from $225 to $275 per month. The same witness further testified that a mine superintendent was paid from $250 to $500 per month, and in some cases more than that sum. The objector's other witness said that in his opinion $300 a month would be "a fair, just and ample salary" to be allowed the receiver for his services. The weight of the testimony given by these witnesses was lessened by the fact that upon cross-examination it appeared that in making their estimates they failed to take into consideration the value of the special abilities and qualifications required of one to discharge in a diplomatic way the onerous duties of the position occupied by the receiver, or that the vexations and annoyances of constant litigation which occupied a considerable portion of the time were entitled to be taken into account. It seemed to be their theory that there should be no difference between the compensation of the receiver of an enterprise who had assumed personal responsibility for the care and conservation of several million dollars' worth of mining, milling and railroad properties involved in litigation, whose responsibility therefor had been guaranteed by a $100,000 bond, and that of a foreman having charge of a crew of men engaged in removing ore from the mine.

On the part of the receiver, two witnesses of ability and experience, apparently at least equal to that of the objector's witnesses, in answer to substantially the same questions which had been propounded to them, gave it as their opinion that the services rendered by the receiver should be worth $20,000 or $25,000 per year. The testimony referred to above was given by persons who would be designated as expert witnesses. However, the record contains the statement of other facts and circumstances which are most persuasive to us. When the defendant companies were confronted with the financial situation which created the necessity for the appointment of a receiver, William R. Allen was, and for a long time prior thereto had been, their president and general manager, and as such was vitally interested in their affairs. When application for the ap-

pointment of a receiver was made, with his counsel he was in consultation with the judge of the court, casting about for the most desirable man for appointment to the position. This conference was at Dillon. Muffly was then a member of the state legislature, which was in session at Helena. Allen and his attorney called Muffly by telephone, and in the presence of Judge Smith solicited him to accept the appointment. According to Allen, either in the telephonic conversation or at a subsequent conference, the matter of the receiver's compensation was discussed, and in reference thereto Allen testified: "In the conference or conversation I stated that it depended largely upon the matter of time. If a man took up a position of that character for a few months, taking him away from his business, I thought $1,000 a month would not be excessive, but if it ran into a period of years I thought it should be cut down from that."

Judge Smith, as a witness, gave it as his recollection that in the telephonic conversation above referred to Allen and his attorney said to Muffly that they would try to have the compensation fixed at $1,000 per month. Muffly himself testified that in the talk over the telephone Allen stated that, if he (Muffly) would accept the appointment as receiver, the compensation would be $1,000 per month.

Of course, this testimony relative to the agreement with Muffly concerning his compensation was not binding upon the court, and we give it consideration only as bearing upon what should be determined as a reasonable allowance. It seems to us that Allen, who knew the properties about to pass into the possession of the receiver and their value better than any other witness produced, and who also knew the nature and extent of the duties and responsibilities to be imposed upon the receiver, and who as president and manager of the companies was himself interested in the conservation of the properties, was in a far more advantageous position to estimate the value of the services to be performed by the receiver than any other

person who appeared as a witness. Moreover, he did not appear as an expert on behalf of either party, and it cannot be said from the record that in his testimony he displayed any partiality toward the receiver. We are impressed with the fact that the testimony given by this witness, who was qualified above all the others to pass upon what would be deemed a reasonable compensation, confirmed the receiver's claim and should be given controlling effect.

Under the provisions of section 8805, Revised Codes of 1921, in an equitable proceeding such as this, authority is reposed in this court to determine the questions of fact, unless for good reasons a new trial, or the taking of additional testimony in the district court, is deemed necessary. It is not perceived that such necessity exists in this case. Two opportunities were afforded to the parties to present their evidence on the point now under consideration, and all that evidence is now before this court. Viewed in its entirety, we do not think it furnishes reasonable grounds for different views, and upon a due consideration thereof we are forced to the conclusion that it clearly preponderates in favor of the receiver's claim for compensation at the rate of $1,000 per month, and that the finding of the trial court reducing that claim to $500 per month cannot be sustained.

2. Prior to the receivership the defendant corporations, while [5] carrying on the business of mining, milling and railroading as going concerns, maintained an office at Allentown, which sufficed for all purposes. When the receiver entered into the discharge of his duties he retained the office at Allentown and, in addition thereto, rented an office in the Lewisohn building in Butte. He also rented a room in the Thornton Hotel in Butte, which was used by him as a bedroom, and in which he kept a portion of the papers and records of the receivership, and where he transacted a part of the business connected therewith. For the rental of this hotel room he asserted a claim for reimbursement as expenses of the receivership at the

rate of $3.50 per day from the time of his appointment down
to June 15, 1925.   He contended that it was necessary for him
to have a private office in Butte, apart from the one main-
tained in the Lewisohn building, in order to escape being con-
tinually harassed by creditors of the defendant companies.
The court apparently adopted the receiver's view as to the
necessity of such arrangement, but considered that the receiver
was not privileged to recover as expenses of the receivership
a portion of his living expenses, and so allowed him the sum
of $40 per month for the rent of the room instead of $3.50 per
day as claimed.   The court's order reducing this claim was
fully justified by the evidence.   The receiver's living expenses
were not proper items of expense to be charged against the
properties under his control.

3. When the receiver filed his report and account on January
19, 1925, he asked to be allowed the sum of $3,500 as compensa-
[6] tion to J. A. Walsh, one of his attorneys.   In the sup-
plementary accounts he asked an additional allowance of $1,850
for payment to Mr. Walsh; of which $350 was for the services
rendered at the hearing on March 11.   At that hearing How-
ard Toole also appeared as counsel for the receiver, and the
supplemental accounts asked the allowance of a $350 fee and
an $11.24 expense item for Mr. Toole.   As heretofore indicated,
the court allowed Messrs. Walsh and Toole for their services
at this hearing the sum of $450 jointly, and also the $11.24
expense item, but only allowed to Mr. Walsh the further sum
of $3,500, being the amount set out in the receiver's report of
January 19.

There is nothing before us to indicate but that when the
receiver filed his report on January 19 he made a claim for
the full amount of the compensation to which counsel was en-
titled down to that date.   A careful examination of the record
fails to show that Mr. Walsh performed any services for the
receiver subsequent to that date except those at the hearings
of March 11 and June 15; so that there was no basis for the

receiver's claim for an additional allowance of $1,500 to him. The compensation allowed to the attorneys for their services at the hearings of March 11 and June 15 was submitted to the court for determination without the introduction of any evidence. Under these conditions the court allowed the attorneys $450 jointly for their services. The record would not justify us in disturbing this determination.

4. No testimony was introduced as to the item set out in [7] the account, "F. B. Layhe, $48.90," and our only information concerning the same is that contained in the court's order disallowing it, wherein it is stated that it is "the cost of transcribing the testimony taken at the hearing on March 11, 1925," upon the report of the receiver to January 19, 1925. If necessity existed for transcribing this testimony so as to make its allowance proper, the burden was on the receiver to show it; he did not do so, and therefore cannot complain of the order of the court disallowing the item.

For the reasons above indicated, the cause is remanded to the district court, with directions to modify the order and judgment appealed from by allowing the receiver as his compensation for the period therein named the sum of $1,000 per month instead of $500 per month, and when so modified the same will stand affirmed. The appellant will recover his costs on this appeal.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.

Rehearing denied March 26, 1926.