STATE ex rel. RANKIN, Attorney General, Respondent, v. FARMERS STATE BANK OF WILSALL, Defendant; BRIEBACH, Receiver, Appellant.

(No. 6,604.)

(Submitted October 1, 1930. Decided October 10, 1930.)

[292 Pac. 575.]

*Mr. James F. O'Connor*, for Appellant, submitted a brief and argued the cause orally.

*Mr. Edward C. Jones*, for Respondent, argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment allowing compensation and attorney's fees to George A. Briebach, as receiver of defendant, an insolvent bank.

It appears from the record that on August 19, 1924, and at the time of the appointment of the receiver, the court made an order fixing his salary at $250 per month. The order was as follows: "Done in chambers this day fixing the salary of Receiver George A. Briebach at $250 per month." On March

21, 1929, the receiver filed his petition and account covering the period from March, 1928, to March, 1929. On July 24, 1929, final account of the receiver and petition for discharge were filed. The accounts charged salary for the receiver at the rate of $250 per month from March, 1928, the expiration of the period covered by the previous report, to July, 1929, and expenses for attorney's fees at the rate of $100 per month for the same period. Objections to both accounts were filed. The objections attacked the item of attorney's fees as well as the receiver's salary, claiming both to be excessive. The salary of the receiver was objected to upon the ground that no services were rendered by him after December, 1928, at which time the assets of the bank were sold by the receiver.

The district court, after hearing evidence relating to the accounts and the objections thereto, found that the total amount of assets of the bank coming into the possession of the receiver was the sum of $267,817.43, of which $103,827.55 was classed as worthless, $110,284.89 as doubtful, and $55,704.99 as good; that the receiver collected during the administration of his trust $43,592.15, and realized $6,500 from the sale of the remaining assets, making a total of $50,902.15, for which he should account. From this sum there had been paid as dividends to creditors the sum of $8,509.32. The court allowed as compensation to the receiver the sum of $2,250 for services from March, 1928, up to December 19, 1928, or at the rate of $250 per month, and allowed $500 for his compensation from that time until the trust was closed. This allowance added to those previously made gave the receiver a total salary of $14,430. The court allowed as attorney's fees for the period covered by the reports the sum of $800, which, added to previous awards, made the total allowance for attorney's fees approximately $5,000. The allowances thus made by the court reduced the items for receiver's salary and attorney's fees contained in the receiver's account by $2,300. The court ordered the receiver to pay this sum to the trust estate, which, after allowing all other expenses, left $5,970.75 for distribution to the creditors. The accounts were approved in

236

all respects save as to the salary of the receiver and attorney's fees. The receiver has appealed from that portion of the judgment reducing his salary and attorney's fees and ordering the payment by him of $2,300 into the trust fund.

From the evidence introduced at the hearing it appears that on December 15, 1928, the receiver sold all the assets of the bank. He testified: "After December 15 after the sale of these assets was made, there was no further administrative work to do with the trust. There were no more notes to collect, so far as the receivership was concerned, nothing to do but care for and distribute the money on order of the court." He further said: "On the 10th of December, 1928, there were papers served on me looking toward my removal as receiver," and he said: "Had there been no litigation instituted I would have closed the trust in December, 1928—the litigation to set aside and remove me as receiver."

It is the contention of the receiver that he was entitled to salary in the sum of $250 per month until discharged, by virtue of the order of the court made at the inception of the receivership.

On behalf of the objectors it is contended that the order of August 19, 1924, purporting to fix the salary of the receiver, was entered without jurisdiction and was void for the reason that no application was filed looking to the fixing of the receiver's salary, and that no notice was given to interested parties. The record before us does not show what proceedings were had in the receivership proceedings culminating in the order fixing the compensation of the receiver.

Whether the rule announced in the case of *Heater* v. *Boston Montana Corp.*, 75 Mont. 532, 244 Pac. 501, would require notice to be given to others than the bank, in view of the provisions of section 6079, Revised Codes 1921, need not be determined here, for the judgment appealed from may be sustained upon other grounds.

Manifestly, the order of August 19, 1924, was to operate only so long as the receiver was actually engaged in the performance of duties relating to his trust. Of necessity these

duties terminated upon the sale of the assets. The order did not provide that it should continue in effect until the receiver was discharged. The active duties of the receiver having terminated by a sale of the assets, he would have no cause to complain if he were allowed reasonable compensation for such services as he rendered thereafter. The court allowed him $500 as compensation for services performed after the assets were sold by him. The court was fully justified in not allowing more. When asked to recite exactly what he had done as receiver from December 15, 1928, to July 24, 1929, Briebach said: "Well, as receiver I appeared in that case [particular case not specified] and I waited for the decision and now I am petitioning the court to discharge me and to distribute the remaining assets." He was then asked: "Other than that you have done nothing?" To which he replied: "No."

It appears that objections were filed to the confirmation of the sale of the assets, but that resulted in additional services of counsel and not of the receiver. The sale of the assets was confirmed by order of the court entered May 7, 1929.

The receiver was not entitled to the regular compensation fixed by the court order of August, 1924, during the time when, admittedly, he rendered no services as receiver. In *Forrester & MacGinniss* v. *Boston & Montana etc. Min. Co.,* 30 Mont. 181, 76 Pac. 2, it was held that a receiver may not receive compensation after he should, in justice, have been discharged, excepting that he may be allowed a reasonable sum for the preparation of accounts to the court. On rehearing in that case the court modified its opinion by holding that the receiver was entitled to a nominal sum for the time he remained in office after he should have been discharged. (*Forrester & MacGinniss* v. *Boston & Montana etc. Min. Co.,* 32 Mont. 240, 79 Pac. 1061.) In that case the receiver had surrendered the property involved in the receivership to the owners, and for that reason the court held he should in justice have been discharged as receiver and thereafter, though remaining in office as receiver, was not entitled to more than nominal compensation. On principle, we see no distinction

between that case and this. Here the assets had been sold and there was no work done thereafter by the receiver for the benefit of the trust. But whether we adhere to the rule of allowing nominal compensation or the reasonable compensation for services rendered is unimportant, for it is clear that the award made by the court under the circumstances here shown was ample under either theory.

The receiver had been paying $100 per month as attorney's ▮ fees throughout the receivership proceedings. No court order had been made fixing the fees in advance of the services rendered. Upon the settlement of the accounts of the receiver prior to those here involved, the expenditure was allowed and approved. While a receiver may employ counsel, he cannot make any contract of hiring or agreement for compensation binding upon the court, whose function it is to determine the necessity for counsel and the compensation to be allowed. (23 R. C. L., p. 138; *Marble* v. *Husbands*, 185 Ky. 605, 215 S. W. 435.)

There is evidence in the record to support the finding that ▮ the sum of $800 was a reasonable attorney's fee for services rendered between March, 1928, and July, 1929. In addition to the evidence offered on this point, the judge of the court was justified in taking into consideration his personal knowledge of the services rendered in fixing the fee. (*Hickey* v. *Parrot Silver & Copper Co.*, 32 Mont. 143, 108 Am. St. Rep. 510, 79 Pac. 698.)

The evidence does not preponderate against the findings of the trial court, and we are therefore not at liberty to disturb them.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICE FORD concur.

ASSOCIATE JUSTICES MATTHEWS and GALEN, being absent, did not hear the argument and take no part in the foregoing decision.