FRANK C. MORTIMER, as Building and Loan Commissioner of the State of California, Plaintiff, v. PACIFIC STATES SAVINGS & LOAN COMPANY, a Corporation, Doing Business in the State of Nevada Under the Fictitious Name and Style of Allied Land & Livestock Company, Defendant.

In Re Appeal of MILTON B. BADT.

No. 3395

October 1, 1943.                    141 P. (2d) 552.

*Robert W. Kenny,* Attorney-General of California, and *I. M. Peckham, Lenore D. Underwood,* and *Perry H. Taft,* Deputy Attorneys-General of California, for Plaintiff.

*Milton B. Badt,* of Elko, in pro. per.

## OPINION

By the Court, DUCKER, J.:

This is a motion for an order dismissing the appeal, or affirming the orders appealed from, made by plaintiff. Some explanatory statements are advisable.

From May 9, 1940, to October 15, 1942, George Russell, Jr., was receiver of the Pacific States Savings & Loan Company, a corporation, doing business in the State of Nevada under the fictitious name of Allied Land & Livestock Co., and appellant was attorney for the receiver during that period. The receiver died on October 15, 1942. Prior to his death appellant had been paid under orders of the court in allowances to the receiver for compensation to appellant for his services to the receiver, the sum of $5,000. On the 28th of October 1942 the court entered an order appointing E. A. Clawson as receiver in the place and stead of George Russell, Jr., who qualified as such on October 30, 1942; and thereafter, and on the 4th day of November 1942 upon request of Clawson, the court appointed Milton J. Reinhart attorney for the receiver, and in its order, the order appointing appellant as such attorney was terminated. Thereafter the judge of the court, feeling

that appellant was entitled to further compensation, suggested that if he would prepare an order the court would fix it. Appellant stated that it was the duty of the receiver to petition the court to fix his compensation and give him an opportunity to be heard on it. The judge spoke to Clawson, who replied: "I don't feel it is any of my affair because I had nothing to do with employing Mr. Badt and know nothing of his services or what he has been paid and don't feel inclined to do it."

The court, on December 11, 1942, entered an order which, among other things, contained the following: "Therefore, upon the court's own motion, it is Hereby Ordered, Adjudged and Decreed as follows, to-wit: 1. That E. A. Clawson, the receiver herein, be and he is hereby authorized, empowered and directed to pay to Milton B. Badt for the firm of Milton B. Badt and Orville R. Wilson, the sum of Two Thousand Five Hundred Dollars ($2,500.00) as their full and entire compensation for services rendered herein. * * *"

The receiver sent appellant a check for $2,500, which he refused to accept, returning it to Clawson. The appellant then noticed a motion to vacate the order, contending that it was inadvertently made without hearing and without notice and without opportunity to any of the parties to be heard in connection therewith, and that the amount allowed was inadequate to compensate him for his services. At the time noticed for the hearing of the motion the appellant appeared in propria persona, and the receiver and defendant appeared by attorneys. The court entered an order denying the motion and made a further order that the 29th day of January 1943, at 10 a. m. be fixed as the time for the hearing of the determination of reasonable attorney fees in the premises, at which time appellant could present proof to show that the attorney fee heretofore fixed and allowed was unjust and unreasonable. It was also ordered that notice of the above order be given by mailing a copy thereof by the clerk to all interested parties.

At that time an extensive hearing was had at which the receiver, the plaintiff and defendant were represented by attorneys, and appellant by himself. Appellant testified in great ·detail as to the services rendered by him to the former receiver and also testified as to the inadequacy of the fee of $2,500 allowed him by the court. He was cross-examined at length by the attorney for plaintiff. He was also cross-examined at some length by the court. Three prominent attorneys of the state testified in behalf of appellant and in turn were cross-examined by the attorney for the plaintiff. No evidence was introduced by the plaintiff or the receiver. One witness was called and examined by the court and cross-examined by appellant. The motion was submitted and taken under advisement. A written opinion was rendered by the court and filed February 27, 1943, in which the following order was made: "For the reasons given, it is hereby ordered that the said order entered by this court on December 11, 1942, will stand as entered."

Appellant's appeal is from that part of the order of the district court made and filed December 11, 1942, which orders the payment to Milton B. Badt of the sum of $2,500 as full and entire unpaid compensation for services rendered; from the order of said court made and filed February 27, 1943, denying appellant's motion to vacate said portion of said order of December 11, 1942, and denying appellant's application for the allowance of further attorneys fees.

The motion to dismiss or affirm is on the ground that appellant is not a party aggrieved by the rulings of the court. In addition to contesting the motion on this ground appellant contends that the plaintiff's right to move to dismiss has been waived. As to this latter contention, it has long been the practice in this court to have such motions heard and disposed of in advance of setting the case for hearing on the merits. Here the appeal was perfected May 3, 1943. Appellant's opening

brief on the merits was filed on June 11, 1943. The plaintiff's brief was filed August 4, 1943, and appellant's closing brief was filed August 16, 1943. The case being thus at issue, the court on that date set the hearing for oral argument for September 21, 1943. Nineteen days after we made that setting, to-wit, on September 4, 1943, this motion to dismiss or affirm noticed for hearing on the same day set for oral argument on the merits, was filed. We heard both the argument on the motion and on the merits at that time in order to accommodate counsel by not postponing the latter argument. It is to be observed that both the plaintiff and receiver obtained stipulations extending time to file briefs on the merits. See Orleans M. Co. v. Le Champ M. Co., 52 Nev. 85–91, 280 P. 887. It is also to be observed that the receiver has not joined in the motion to dismiss or affirm. At the hearing on September 21, 1943, counsel for plaintiff assumed a rather indifferent attitude as to how the motion should be decided, stating that the office of the attorney-general of California wanted a decision on the point on account of similar cases then pending in that state.

We think the right to move to dismiss an appeal so belatedly and unilaterally made, and perfunctorily presented, ought to be disregarded. Moreover, the element of estoppel is involved. As we view it, there has been a change of position to appellant's prejudice. The order of the lower court allowed the fee of $2,500 to appellant. Appellant moved to vacate it on the grounds of lack of notice and inadequacy of the compensation. Plaintiff resisted the motion and defended the order of the court. No objection or suggestion was made that the appellant had no right to make the motion in his own behalf to vacate the order, and that it should have been made in behalf of the receiver. It was recognized by court and counsel that he was within his rights in proceeding as he did. It is now claimed on this motion that the appellant has no right of appeal because he is not a party; that the receiver is such a party; that the

award of counsel fees is an award made to the receiver and not to the attorney. Had this position been taken below, the court might have vacated its order pursuant to appellant's motion and allowed the sum to the receiver. Appellant could then, if the receiver refused to appeal, have applied to the court for permission to proceed in his own right and in his own name for additional compensation out of the fund in the court, and in that case the appellant could have appealed, if unsuccessful.

In this situation the plaintiff ought not to be heard to ask a dismissal or affirmance.

For the reasons given, the motion to dismiss the appeal or affirm the orders is denied.

## ON THE MERITS

February 3, 1944.                    145 P. (2d) 733.

*Robert W. Kenny,* Attorney-General of California, and *I. M. Peckham, Lenore D. Underwood,* and *Perry H. Taft,* Deputy Attorneys-General of California, for Plaintiff.

*Morley Griswold,* of Reno, and *Milton J. Reinhart,* of Elko, for receiver E. A. Clawson.

*Milton B. Badt,* of Elko, in pro. per.

## OPINION

By the Court, DUCKER, J.:

This is an appeal taken by an attorney for a receiver from an order allowing fees to the attorney, and from an order denying his motion to vacate same. See Mortimer v. Pacific States Savings & Loan Co., Nev., 141 P. 2d 552.

On May 9, 1940, George B. Russell, Jr., was appointed receiver of the property of the defendant land and livestock company in this state. On the day following, appellant, at the request of the receiver, was appointed his attorney and continued to act in that capacity until the receiver died on October 15, 1942. On October 28, 1942, E. A. Clawson was appointed receiver of the defendant, and at his request an attorney, other than appellant, was appointed for the new receiver. The court, on December 5, 1940, by its written order, allowed appellant the sum of $2,000 in full for his services to the receiver from the date of his appointment to and including that month, which was paid by the receiver to appellant. On December 9, 1941, pursuant to an application by the receiver for increased compensation to himself and for payment of attorney fees, the court entered a minute order denying receiver's application for increased compensation. As to the payment of attorney fees, the following minute order was entered:

"It is hereby ordered that the receiver pay Messrs. Badt & Wilson, attorneys representing the receiver, the sum of $3000, out of the funds now in his hands, for the calendar year of 1941, and the court reserves the right to fix any future fees for services performed in the future."

On the following day a formal written order was filed, which recited: "Now, therefore, the court being fully advised as to the law and the facts in the premises, and good cause appearing therefor, it is hereby ordered: 'That there is hereby allowed and said receiver is hereby ordered to pay out of the funds in his hands, to Messrs. Milton B. Badt and Orville R. Wilson, as compensation for their services as attorneys for the receiver, for the calendar year 1941, the sum of $3000 subject to the right hereby reserved by said court, to consider the matter of any additional allowance at the close of the receivership, or when proper occasion should arise."

Appellant's employment having terminated with the death of Receiver Russell, the judge suggested to appellant that if he would prepare an order the court would fix his compensation in full. Appellant stated that it was the duty of the receiver to petition the court to fix his compensation and give him (appellant) an opportunity to be heard on it. The judge endeavored to get the receiver to do this but he declined to do so. Whereupon the court, on December 11, 1942, entered an order which, among other things, contained the following:

"Therefore, upon the Court's own motion, it is Hereby Ordered, Adjudged and Decreed, as follows, to-wit:

"1. That E. A. Clawson, the receiver herein, be and he is hereby authorized, empowered and directed to pay to Milton B. Badt for the firm of Milton B. Badt and Orville R. Wilson, the sum of Two Thousand Five Hundred Dollars ($2500.00) as their full and entire unpaid compensation for services rendered herein."

The receiver sent appellant a check for the amount, which he refused to accept, returning it to sender. The appellant then noticed a motion to vacate the order on

the ground that it was inadvertently made, in that it was made without hearing, and without notice and without opportunity to any of the parties to be heard in connection therewith, and that the amount allowed was inadequate to compensate him for his services. A hearing was had and the court entered an order denying the motion. It made a further order that the 29th day of January 1943 at 10 a. m. be fixed as the time for the hearing of the determination of reasonable attorney fees in the premises, at which time appellant could offer proof to show that the attorney fee heretofore fixed and allowed was unjust and unreasonable. The hearing which followed was quite extensive. Appellant testified in considerable detail as to the services rendered by him to the former receiver, and also testified as to the inadequacy of the compensation allowed him by the court. Three prominent attorneys of the state appeared as witnesses for appellant and testified as to the value of his services. No testimony was introduced by the plaintiff or receiver. One witness was called and examined by the court. The motion was submitted and taken under advisement. A written opinion was rendered and filed by the court, wherein it was ordered: "For the reasons given, it is hereby ordered that the said order entered by this court on December 11, 1942, will stand as entered."

The appeal is from that part of the order of December 11, 1942, which orders the sum of $2,500 to be paid to appellant as full and entire unpaid compensation for services rendered, and from the order of February 27, 1943, denying appellant's motion to vacate said portion of said order of December 11, 1942, and denying appellant's application for an allowance of further attorney fees.

The main question is the adequacy of appellant's compensation. There is a dispute between him and opposing counsel as to the period for which the former may claim for services rendered. Appellant conceded that the first

payment he received of $2,000 was in full for his employment from the date of his appointment to and including December 1940, but contends that his compensation, unpaid, should be allowed for the year 1941 and to and including October 15, 1942, the date of the receiver's death. Opposing counsel contend that the record shows that appellant received compensation in full for 1941. This is predicated upon the claim that the minute order of December 9, 1941, is controlling as against the formal written order of the following day, and that appellant, having failed to take an appeal from said minute order, is concluded by it.

■■■ The formal written order signed by the court, must, we think, supersede the minute ordered entered by the clerk. State v. Bell, 34 Wash. 185, 75 P. 641; Hanley v. Most, 9 Wash. 2d 429, 115 P. 2d 951, 118 P. 2d 946; 34 C. J. 506, n. 64; 21 C. J. S., Courts, sec. 237, p. 445. It must be taken as the best evidence of the court's decision. The fact that it was prepared by appellant is of no consequence. A court is presumed to read and know what it signs. The practice of preparing entries for the court to sign and enter of record, is proper. 21 C. J. S., Courts, sec. 226, p. 421. By the same principle, where there is a conflict between a minute order and a judgment, the latter will prevail. Gould v. Austin, 52 Wash. 457, 100 P. 1029, 1030. In the above case the court said: "The rule in this state is that, where there is a conflict between the clerk's minute entry of the court's proceedings and the formal written judgment signed by the judge, the latter will control, and be deemed the actual judgment of the court. This was held by us in the case of State ex rel. Jensen v. Bell, 34 Wash. 185, 75 P. 641, where we prohibited the trial judge from enforcing an order as recorded in the clerk's minutes instead of the order as recorded in the formal written entry signed by him; the orders as recorded being conflicting."

Citing the above case, and holding to the same effect,

is McFadden v. McFadden, 22 Ariz. 246, 196 P. 452–453, wherein the court said: "Moreover, we think, in conformity with the rule in at least one jurisdiction, that where this is a conflict between the entry made by the clerk in the minutes and the solemn judgment of the court, the terms of the latter should be given force and effect, rather than of the former."

█ It has been urged that the formal written order of December 10, 1941, is ambiguous; that therefore the minute order should govern, and that the appellant, having taken no appeal from it, is concluded by it. The formal order is not ambiguous. It states in unequivocal language: "The right reserved * * * by said court to consider the matter of any additional allowance at the close of the receivership, or when proper occasion should arise." The language refers to the past as well as the future. If the trial court did not consider it so, why did it permit appellant to offer proof as to the whole period of his employment? Why did it not restrict his proof to 1942? If it did not wish to make a change in the minute order why did it sign the latter order at all? Courts are not given to making idle orders.

█ Neither the attorney for the plaintiff nor the attorney for the receiver took the position that the later order is ambiguous. They placed their contention squarely on the proposition that the minute order was controlling. The formal written order stands unimpeached. We hold that it is not a final order and that it prevails over the minute order.

We now come to the question of the adequacy of the amount allowed by the court for the appellant's services to the receiver. Counsel for the plaintiff or receiver introduced no evidence or testimony in rebuttal of appellant's case established at the hearing. They stand upon the declaration that the compensation allowed was strictly within the discretion of the trial court and cannot be disturbed by this court unless it is found there was an abuse of discretion. They assert that there was no such abuse. The defendant, as its name implies, was

engaged in the land and livestock business when its property was made the subject of a receivership. Its business had been conducted on an extensive scale in this state prior to the receivership. The value of its assets and business is indicated by the fact that the receiver was required to furnish a bond in the sum of $200,000. The extent and value of the estate administered, as appears from appellant's testimony, which is undisputed, appears as follows:

"On January 21, 1942, Mr. Russell, as Receiver, had a local independent livestock appraiser make an appraisal of the stock on hand, and this showed the following valuations based on the prices given to the individual classifications:

| | | |
|---|---|---:|
| 8850 | cattle | $491,150.00 |
| 32693 | sheep | 307,654.00 |
| 832 | horses | 41,600.00 |

Total, cattle, sheep and horses ........................ $840,414.00

"To the above prices should be added the following:

Classification of 2744 cows valued at $55.00 per head should be raised to $65.00 per head, or an addition of ........................... 27,440.00

Classification of 869 2-year-old heifers valued at $55.00 per head, should likewise be increased to $65.00 per head, making an addition of ............................... 8,690.00

Increase of cattle herd from 8850 head to 9100 head, a difference of 250 head, at $50.00 per head ........................... 12,500.00

Hay on hand October 28, 1943, being 10,685.73 tons at $7.50 per ton ................... 80,142.97

Cash in bank September 30, 1942 ................. 263,109.04

Total of cash and quick assets of personal property ........................................................ 1,232,296.01

"The above can be said, without a great variation, to be the immediate cash value of the personal property in the hands of Geo. Russell, Jr., Receiver, at the time of

his death, held by him under his $200,000.00 surety bond. Other personal property, running into many thousands of dollars, would consist of machinery, ranch equipment, commissaries, and supplies on hand, etc., and also including hogs and poultry which have not been included here. It would probably not be out of the way to figure the land as of the approximate value as the livestock, which would run the total valuation close to two and a half million dollars."

During appellant's employment from May 10, 1940, to and including October 15, 1942, the receivership continued in an extremely active status. Business was carried on by the receiver in all its branches. The receivership was so well administered that on September 30, 1942, there was cash in bank in the sum of $263,109.04, whereas prior to that time, it had been necessary to borrow money on receiver's certificates, and for the receiver to advance his own money to carry on the business.

■ As heretofore stated, appellant was a witness in his own behalf. He is known to this court as an attorney of ability and integrity in the profession. His testimony shows that he has been engaged in the practice of law continuously since 1909, a period of over 32 years, of which approximately 27 years had been spent continuously in Nevada. His practice has been extensive in fields involving lands and livestock holdings, banks, receiverships, which should qualify him to give expert services to a receiver in a case of this kind. We mention the above because the skill and faithfulness of an attorney are elements to be considered in fixing the fees of an attorney for a receiver. Appellant's testimony was presented at the hearing in the form of a written statement from which he testified, and covered in detail his activities during the entire course of his employment. To enumerate them in full would serve no useful purpose and unreasonably extend this opinion. His office files were presented and examined. Suffice it to say, that his work consisted of what would reasonably

be expected to engage the attention of an attorney for a receiver in a receivership of that magnitude and character, in a business, which, in this state, experience has shown to be of a nature requiring great skill and care for successful management. The management was so thorough and businesslike in this case as to elicit from one of the witnesses, Mr. M. A. Diskin, a former attorney-general of this state, when he was undergoing cross-examination by the court, the following: "If the Court please, if you'll permit me to make a remark: I have examined a great number of receiverships and never yet have I examined a proceeding where it has been so expeditiously carried on, everything on time and so methodically, as the records in this case disclose that this receivership was carried on. I appreciate a great deal of that credit is given to the Court, but we must give some credit to the attorney and the receiver."

And again this witness, while still on cross-examination by the court, commenting on the responsibility involved, testified: "Whenever you take assets worth a million and a half or two million dollars and dump them into the lap of the Court, and a receiver, and the receiver's attorney, you have got a responsibility that doesn't end when the day's over. That attorney and the Court takes it to bed with them, you couldn't say, when the day's over, but when the work's through."

The three expert witnesses called by appellant, Mr. Samuel Platt, Mr. Lester D. Summerfield, and Mr. M. A. Diskin, are among the outstanding attorneys of this state, and each has had a wide experience in receivership and similar matters. After listening to appellant's testimony they testified respectively, as follows: Mr. Platt stated in his opinion, $20,000 for appellant's entire professional services for the receiver, would be a reasonable, proper amount to be paid. Mr. Summerfield testified that in his opinion "the fee should be in the minimum of $15,000 to a maximum of $25,000." "I leave a leeway," he said, "through lack of a complete familiarity with all the minute details in the case and services

rendered." Mr. Diskin testified that in his opinion the reasonable value of such services should be: "A minimum of $15,000 and a maximum of $22,500, or a minimum based at the rate of five hundred per month, and a maximum based at the rate of seven hundred fifty a month."

██ The foregoing is a fair summarization of the evidence and testimony which the trial court had before it when it finally ordered that the allowance of $2,500 should stand as compensation in full for appellant's services. In finding the reasonable value of a receiver's or his attorney's fees, the elements to be considered as controlling are fairly well stated in United States v. Admiral Refining Co., Tex. Civ. App., 146 S. W. 2d 830, 831, cited by plaintiff: " 'The considerations that should be controlling with the court in fixing compensation are the value of the property in controversy; the practical benefits derived from the receiver's efforts and attention; time, labor and skill needed or expended in the proper performance of the duties imposed, and their value measured by the common business standards; and the degree of activity, integrity, and dispatch with which the work of the receivership is conducted.' * * * The measures to be weighed in fixing attorney's fees in receivership proceedings are, to a large extent, the same which are considered in fixing the receiver's fees. In fixing the allowances to either, the governing principle is that the compensation so allowed should be measured by the reasonable value of their services rendered."

█ Applying this to the evidence and testimony in this case we think that appellant's services are reasonably worth more than was allowed by the trial court. We have in mind, and agree with the general rule, that the fixing of compensation of receivers or their counsel is ordinarily a matter within the discretion of the trial court and will not be interfered with on appeal, except in cases where it has been abused. Such allowances are presumptively correct. Citation of authority is

unnecessary to attest this well-settled rule.  However, it is held that the matter "is discretionary only in the sense that there are no fixed rules for determining the proper amount and not in the sense that the court is at liberty to award more than fair and reasonable compensation," 53 C. J. 378, nor less than such compensation, for the same reason.

One consideration, we think, which contributed to the cause of the trial court's failure to exercise a proper discretion in the premises, stems from the order of December 11, 1942.  That order was invalid because made without notice and without opportunity to any of the parties to be heard.  As was said in Weber v. Empire Holding Corporation, 149 Or. 503, 41 P. 2d 1084, 1087, quoting from Ruggles v. Patton, 6 Cir., 143. F. 312, 314: "Nothing is better settled than that an allowance to a receiver by way of compensation for his services is not subject to the arbitrary determination of the court, but should be made upon a hearing at which the parties interested have an opportunity of contesting the claim."  Colkett v. Hammond, 101 Wash. 416, 172 P. 548;  Heater v. Boston-Montana Corporation, 75 Mont. 532, 244 P. 501.

The same rule applies as to an attorney for a receiver. No objection to the order being set aside pursuant to appellant's motion was made by any attorney in the case.  The court refused to set it aside and kept it in force and effect during the hearings.  The result was that, while the court permitted appellant to introduce testimony as to what would constitute fair and reasonable compensation, he was compelled to present all his testimony in the face of that arbitrary and invalid order. This procedure placed him somewhat in the unhappy predicament of one introducing evidence on an issue after a decision had been rendered.  The error of the court in not setting aside the order and receiving the testimony on an open issue was fundamental, and, in our opinion, was prejudicial to appellant throughout the hearing.  The order contained a finding of the court

that appellant had not been compensated for his services from January 1, 1942, to October 31, 1942. This, by plain implication, finds that he had been fully compensated for all former services, whereas we have decided that he was not concluded by the formal written order of December 10, 1941 for additional compensation for the year 1941. We think it is a fair presumption to indulge from the record that the court was influenced, unconsciously perhaps, by this order. This is indicated by the record before us. The court, throughout the hearing, strove energetically to defend the order. Notwithstanding the plaintiff was represented by the deputy attorney-general of California, who conducted a very thorough cross-examination of appellant, which elicited from Mr. Robbins, attorney for the defendant (who declined to cross-examine), the observation that "Mr. Peckham seems to have covered the entire field of cross-examination," the court, at this juncture, subjected appellant to a rigid cross-examination endeavoring to show that many of the conferences which appellant had listed with the receiver's bookkeeper, Mr. Zuber, as services performed by appellant were of no consequence; also that all of the credit for the receiver's accounts to the court was due to the bookkeeper. The same procedure was maintained as to the accounts when Mr. Diskin was undergoing cross-examination by the court. He was questioned at length in an effort to show that appellant was seeking to claim for services which it was the duty of the receiver to perform without the aid of counsel. Again, when movant and plaintiff had closed, the court, on its own motion, called Mr. Zuber, bookkeeper and accountant for receiver Russell, and had him sworn as a witness, and examined him at length, endeavoring to show that most of some thirty-three conferences which appellant had listed as having had with him prior to Russell's death, were unnecessary and of no consequence. However, on cross-examination by appellant, Mr. Zuber did not deny that any of the

conferences claimed were had. We think the opinion of this witness that the conferences were of no consequence is not of a quality to conflict with the testimony of appellant in this respect.

Another circumstance which we think was unfavorable to appellant was the court's idea that the defendant was at all times during the receivership a going concern. This conviction was repeatedly stressed by the court in its written opinion of December 5, 1940, in which appellant was allowed $2,000 for his services for that year. Again the same belief is indicated by the court in its cross-examination of Mr. Diskin when it propounded the following question: "And where it is simply like in this instance, a going concern, where the receiver simply managed a going concern, that should make some difference, shouldn't it?" This was an erroneous view, and of course lessened the value of appellant's services in the mind of the trial court. It is not unreasonable to presume that this view induced the trial court to allow appellant's compensation on the theory of a retainer. In its written opinion of December 5, 1940, it was stated: "In short, the attorney's employment so far at least, should be considered more in the nature of a retainer." The court, as we have seen, allowed appellant's compensation at the rate of $250 per month during that year and continued it throughout his employment at that rate.

If defendant was a going concern, it was only so towards the end of receiver Russell's administration, and made so by his able management, to which it must be allowed appellant's services contributed to some extent.

■ Appellant contends that the trial court ignored the testimony of his three witnesses. We concede that the court was not bound by such testimony. Such is the clear weight of authority. It was bound, however, to consider this testimony, and if its intrinsic force and probability outweighed its own estimate of the

worth of appellant's services, to accord probative value
to it. Whether the trial court did consider their testi-
mony in this manner, we have no means of knowing.
It is certain however, that it was not influenced by it.

However, by reason of the condition of the record
before us we are not bound by the trial court's opinion
in regard to the testimony of the expert witnesses, and
we, on the contrary, accord weight to it.

██ The rule heretofore adverted to that fixing the
compensation of receivers and their counsel is ordinar-
ily for the trial court and will not be interfered with
on appeal, unless there is an abuse of discretion, is
based upon the consideration that usually that court
has better means of knowing what compensation is just
and reasonable than the appellate court. But this con-
sideration is of no force in this case because appellant's
testimony, which is not contradicted in any respect, has
presented such a clear picture of all that transpired in
the lower court, concerning which he rendered service
during his employment, that we are able to judge the
matter as well as the trial court.

██ For the foregoing reasons, we see no useful
purpose to be accomplished in sending the case back
for a new trial for the purpose of an additional allow-
ance for the year 1941. We are able to fix additional
compensation for appellant for that year. We are not
authorized to do so for the ten months of his service
in 1942 for the reason that the order appealed from
making an allowance of $2,500 was void, and it follows
that no compensation has been legally allowed for that
period. It is incumbent on the trial court in the first
instance to fix a reasonable fee for those months.

It is said that the order of February 27, 1943, should
be regarded as a valid, final order fixing the amount
of appellant's compensation for his services performed
in 1942, and that he is entitled to have this court decide
whether the trial court abused its discretion in not fix-
ing a higher amount than $2,500 for the services per-
formed in 1942. These statements are made on the

theory that there is a valid order fixing such amount, whereas there is no such order. The order of February 27, 1943, made no allowance for attorney fees. It read: "For the reasons given, it is hereby ordered that the said order entered by this court on December 11, 1942, will stand as entered."

How then could the order of February 27, 1943, be regarded as a valid order, or any order fixing compensation? The order of December 11, 1942, fixing appellant's compensation for 1942 at $2,500, as we have held, is void. No act of appellant in introducing testimony in the face of it, by permission of the trial court, could render it valid. A void order cannot be enlivened by waiver or any other method to suit the convenience of a party. In legal contemplation it is without force or effect. Being void, no compensation was fixed by it, and it is still the duty of the trial court in the first instance to fix a reasonable fee for the ten months in 1942. For this court to proceed now to decide whether the trial court abused its discretion in not fixing a higher amount than $2,500 for the services performed in 1942, would be exercising original rather than appellate jurisdiction.

What we have said of the actions and statements of the trial court must not be taken as censure. Our purpose in that respect has been merely to cite causes, which in our opinion, induced the court to underestimate the amount and value of appellant's services. No reflection is intended.

The court's desire to protect the estate submitted to its jurisdiction from unnecessary expense is commendable. As has been justly said, a court should not be liberal with other people's money. On the other hand, the laborer is worthy of his hire. The practice of frugality and conservatism in the administration of receiverships should not be advanced to the extent of outweighing considerations of skill and worth.

The orders appealed from are reversed and the lower court is directed to set them aside and to enter

an order allowing appellant a fee of $3,000 as additional compensation for his services for the year 1941. Such order, when entered, will stand affirmed.

ORR, J., concurring.

I concur in the opinion of Justice DUCKER and in the order.

I am convinced the rule announced in that opinion to the effect that the written order should prevail over the minute entry is correct. This because of the fact that such rule conforms to the practice followed for many years and accorded recognition by the courts and the bar, that is to say: the solemn decree of a court, bearing the signature of the judge thereof, is recognized as the judgment of the court until changed by appropriate proceedings instituted therefor. I find nothing in the Nevada cases inconsistent with such a practice. There is no question but what the pronouncement by the court from the bench of a judgment is the rendition of the judgment by the court. But in this case we are not concerned with the question of when the judgment was rendered; we are concerned with what shall be accepted by this court as evidence of what judgment was rendered. As pointed out by Justice DUCKER, the cases of Gould v. Austin, 52 Wash. 457, 100 P. 1029, and McFadden v. McFadden, 22 Ariz. 246, 196 P. 452, hold that the written order or decree should control over the minute order. The case at bar is distinguishable from the case of Silva v. Second Judicial District Court, 57 Nev. 468, 66 P. 2d 422, just as Gould v. Austin and McFadden v. McFadden are distinguishable therefrom. The instant case and McFadden v. McFadden and Gould v. Austin are in one class, the Silva case in another. In the first the question of whether the written order or the minute order should be accepted in determining what the decision of the court was, and the second a proceeding seeking to make the decree speak the truth. There is nothing in the Silva case to the effect that the decree entered therein was not

binding until such time as corrected. Suppose in the Silva case, without any effort having been made to have the decree corrected, the parties, basing their request upon the minute order, the recollection of the judge and the notes of the reporter, had asked the trial court to enter an order changing the custody of the children and the court had refused to do so upon the ground that it had lost jurisdiction; that thereafter an appeal had been taken to this court and the contention made that the court retained jurisdiction, but the decree being silent thereon the appellant had offered to prove that such was the case, by the reporter's transcript, the recollection of the judge and the minute order. I apprehend that this court would have been compelled to rely upon the recitals of the decree, and that the proposals of the appellant would have been rejected. It seems manifest that the situation in the Silva case was so understood by the parties, who recognized that before the recollection of the judge as to his intention, the minute order and the reporter's notes could be given force and effect, a proper proceeding by motion in the trial court must be instituted to have the decree speak the truth in that respect. It is not to be understood that a statement in a decree or order if different from the actual pronouncement of the court must stand for all time, but it should do so until corrected by an appropriate proceeding, either upon motion of one of the parties or by the trial court upon its own motion. This latter procedure was sanctioned in the case of Gottwals v. Rencher, 60 Nev. 35, 47, 92 P. 2d 1000, 98 P. 2d 481, 126 A. L. R. 1262. Until so corrected it is binding upon the parties. This is the rule laid down in Forker v. Hopkins, 64 Colo. 325, 171 P. 361, at page 362, and Bates v. Hall, 44 Colo. 360, 98 P. 3, 6. The fact that the Colorado cases were brought under a special statute relating to irrigation law does not, to my mind, detract from their value as authority. Decrees in water cases are no more solemn and binding than decrees in other proceedings. I think the reasoning employed in said

Colorado cases is sound and may be applied to all decrees and judgments. See Bancroft's Code Pleading and Remedies, vol. 3, page 2235, notes 3, 4, 5 and 6. It seems plain that failure to follow the rule that the written order is binding until changed would lead to much confusion. I agree with the statement in the case of Gould v. Austin, supra [52 Wash. 457, 100 P. 1030]: "there should be some standard in the record, to which reference may be made as the conclusive evidence of what has been actually decided. * * * That, when the court signs a written order, it shall be considered the evidence of its real and final act touching the subject immediately under consideration." The practice of filing written orders and written decrees signed by the judge, though not specifically required by statute, is a good one and should be encouraged. The best way to encourage such practice is to accord to such decrees and orders the recognition long practice has established.

I am further convinced that the remanding of the case to the trial court to fix a fee for the year 1942 is absolutely necessary. The order entered by the trial court attempting to fix such a fee being void there is nothing which transpired at the hearing on February 27 which we can legally consider as constituting such an order. The fixing of a fee lies with the trial court in the first instance, and until it has actually made a valid order this court has nothing on which to base a determination as to whether or not the trial court has abused its discretion.

TABER, J., dissenting.

There is no controversy concerning the $2,000 allowed appellant for his services performed in the year 1940. The order making that allowance was final, and in. full for appellant's services from the date of his appointment May 10, 1940, to and including December of the same year.

There is a difference of opinion regarding the order

allowing appellant $3,000 for his services performed in 1941. Plaintiff and the present receiver contend that the trial court was right in holding that said order, like that of 1940, was final, and that said allowance was in full for the year 1941. This contention is based chiefly upon an order made in open court December 9, 1941, and entered in the court minutes of that date in the following language: "It is hereby ordered that the Receiver pay Messrs. Badt & Wilson, attorneys representing the Receiver the sum of $3,000.00 out of the funds now in his hands for the calendar year of 1941, and the Court reserves the right to fix any future fees for services performed in the future."

It is appellant's contention that said order was not final, and that said allowance was not necessarily in full for his 1941 services. This contention is based upon a formal order prepared by appellant, dated December 10, 1941, and signed by the trial judge and filed on that date. This order, omitting preliminary recitals and the signature and official title of the judge, reads as follows:

"That there is hereby allowed and said Receiver is ordered to pay out of the funds in his hands to Messrs. Milton B. Badt and Orville R. Wilson as compensation for their services as attorneys for the Receiver, for the calendar year of 1941, the sum of $3,000.00, subject to the right hereby reserved by said Court to consider the matter of any additional allowance at the close of the Receivership, or when the proper occasion should arise.

"Dated this 10th day of December, 1941, per minute order of December 9, 1941."

In view of certain decisions of this court, I think the position taken by plaintiff and the present receiver is the correct one. Silva v. Second Judicial District Court, 57 Nev. 468, 66 P. 2d 422; California State Tel. Co. v. Patterson, 1 Nev. 150; First Nat. Bank in Reno v. Fallon, 55 Nev. 102, 26 P. 2d 232; Gottwals v. Rencher, 60 Nev. 35, 47, 92 P. 2d 1000, 98 P. 2d 481, 126 A. L. R. 1262; Coleman v. Moore & McIntosh, 49 Nev. 139, 241

P. 217; Central T. Co. v. Holmes M. Co., 30 Nev. 437, 97 P. 390; Kehoe v. Blethen, 10 Nev. 445. See also the following texts, all of which cite one or more Nevada cases: 3 Bancroft's Code Pr. and Rem., p. 2232, nn. 7, 8, 9, p. 2234, n. 16, p. 2249, nn. 18, 19; 1 Freeman on Judgments, 5th Ed., p. 75 n. 1, pp. 80–81, nn. 1, 2, 3, 4, p. 109, n. 5, p. 110, n. 8; 34 C. J. 44–45; 14 Standard Proc. p. 971, n. 31, p. 988; 23 Cyc. 835, 836; 18 Encyc. of Pl. and Pr. pp. 429, 430, 438, n. 2; 17 Am. and Eng. Encyc. of Law 768, n. 5. While the foregoing authorities relate to judgments and decrees, they are applicable to orders.

In Silva v. Second Judicial District Court, supra, the trial court, in rendering judgment from the bench, reserved jurisdiction to modify a divorce decree with respect to custody and support of minor children. Said reservation was omitted from the formal written decree. This court held, in mandamus proceedings, that said omission was a clerical error, and that the trial court had the power and it was its duty to amend the decree to conform to the judgment actually rendered in open court. The court said in part [57 Nev. 468, 66 P. 2d 425]: "There can be no question as to the omission of the reservation in this case being clerical and not the result of judicial error. * * * Nor can there be any question that the pronouncement from the bench is the final decree. California State. Tel. Co. v. Patterson, 1 Nev. 150; First National Bank in Reno v. Fallon, 55 Nev. 102, 26 P. 2d 232, with which the decree signed by the judge and entered should correspond."

In the Silva case, two cases relied on by appellant in the case at bar were distingushed by this court as follows: "The rulings in State ex rel. Jensen v. Bell, 34 Wash. 185, 75 P. 641, and McFadden v. McFadden, 22 Ariz. 246, 196 P. 452, relied on by respondents are distinguishable from the question presented here. In each of those instances the court held that the formal judgment signed by the judge should be accorded greater

weight than the minute entry of the clerk, and the former was deemed conclusive of what was actually adjudicated. But the case before us is not one of conflicting evidence in which every intendment should be drawn in favor of a formal decree. The minute entry in this case is corroborated by the court reporter's transcription of the proceedings, and confirmed by the recollection of the trial judge."

In Gottwals v. Rencher, supra, a minute entry was uncertain in its terms and did not truly and correctly state the oral decision actually rendered by the trial court. That court ordered said entry to be amended so as to conform to the decision actually rendered from the bench. This court on appeal [60 Nev. 35, 98 P. 2d 486, 126 A. L. R. 1262], upheld said action of the trial court, saying that the latter "merely corrected the record so as to make it speak the truth as to what was actually decided." In the same case the court further said: "The court's statement that the minute entry was uncertain in its terms and not the true or correct statement of what occurred, must be taken as true. Moreover, it is corroborated by testimony of the clerk that the said transcript contained only a partial statement of what the court had said and that she did not remember what else he had said. In any event, a trial court in rendering its oral decision is not bound by what the clerk or stenographer has taken down, but may rely on its own memory as to what was actually decided. It may, in the exercise of its discretion, refresh its memory in this respect from any source it deems reliable."

In Linville v. Scheeline, 30 Nev. 106, 93 P. 225, 227, this court, after saying it had repeatedly been held in Nevada that the decision of the court is the announcement by the court of its judgment, and is distinct from the findings went on to say: "Were this question a new one, it might be open to serious question, as many authorities, under similar statutes, take a contrary view. The practice in this state, however, of regarding the

oral announcement by the court of its judgment as the decision, has been so thoroughly recognized by the bench and bar that it would not now be proper to announce a different rule."

Without quoting from California State Tel. Co. v. Patterson, 1 Nev. 150, attention is directed to pages 155, 156 and 159 of the opinion.

The minute order of December 9, 1941, is clear and certain in its language, and free from all ambiguity. It correctly records the order actually made in open court on that date. We have the statement of the trial judge to that effect, made while he was questioning appellant at the hearing on January 29, 1943. It appears in the following excerpt from the record:

"By the Court:

"Q. Mr. Badt, I understand you are petitioning now for a readjustment or reallowance of these fees over this whole period? A. I am asking particularly for, your Honor, two periods, two phases, the period of 1941 and of 1942 to Mr. Russell's death is particularly involved by reason of the fact that the allowance last year in December 1941 was without prejudice to additional allowance at the time of the closing of the receivership or if proper occasion should arise.

"Q. I think, Mr. Badt, you don't have a very clear understanding. I made a minute order from the bench fixing your fees for 1941 in the sum of $3,000.00. A. Yes, your Honor.

"Q. Two-hundred fifty dollars a month for twelve months, and the only reservation that I made in that was that I reserved the right to fix any fees for future services, having in mind that in the event there was litigation, or something out of the ordinary, that would justify, in my opinion, a much larger fee. * * *"

This statement of the trial judge, expressly corroborating the minute order of December 9, is entitled to the same weight as the statement of the trial judge in Gottwals v. Rencher, supra, and the recollection of the trial judge in the Silva case. If the minute order

had not correctly recorded the order actually made from the bench, it may be presumed that the trial judge would not have confirmed and approved it by making said statement. The fact that the minute order has been corroborated by the trial judge, and the further fact that no attempt has been made to show that it failed in any respect to correctly record the order made in open court, afford convincing proof that said minute entry correctly records that order.

What has just been said is not to be taken as meaning that in construing an order or judgment made by the trial court this court can consider that court's opinion as to the meaning of such order or judgment. We cannot, for example, in construing the written order of December 10, take into consideration the fact that the trial court in its ruling of February 27, 1943, held that the order allowing appellant $3,000 for his 1941 services was a definite and final order. Cook v. Smith, Tex. Civ. App., 96 S. W. 2d 318; Taylor v. City of Guelph, 39 Dom. Law Rep. 416, 419; 42 C. J. 556, n. 27(b). But the statement made by the court at the hearing on January 29, 1943, was not an expression of opinion. It was a statement of fact made in open court during a hearing at which one of the questions under consideration was whether the order allowing compensation for 1941 services was or was not a final order. And it will be observed that in making the statement the court did not merely say that the minute order read thus and so; what it did say was, "I made a minute order from the bench * * *." Here we have a statement emanating from the memory and recollection of the trial judge. It is contained in the bill of exceptions which constitutes a part of the record on appeal, and relates directly to the matter under consideration. It is not an expression of opinion as to what the minute order means, or as to how it should be construed. That order calls for no construction, as it is clear, certain and complete in all particulars.

If, in this case, the order actually made in open court on December 9 had included a reservation of the right

to make additional allowances in the future for services performed in 1941, but such reservation had been omitted in the formal order of December 10, there would have been, as in the Silva case, a clerical error which could and should have been corrected by the trial court. But there was no such reservation in the order actually made on December 9; on the contrary, the reservation relates exclusively to allowances for services to be performed in the future.

Suppose in the present case the court on December 9, 1941, had made an order from the bench allowing appellant $3,000 for his services performed in that year, expressly reserving the right, however, to make additional allowances in the future for such 1941 services. Suppose further that the minute order of that date clearly and correctly recorded said order actually made in open court. If the court on the following day had prepared, signed and filed a formal written order, "per minute order of December 9, 1941," allowing $3,000 to appellant in full for his 1941 services and reserving the right to make additional allowances in the future, but only for services to be performed in the future, the latter reservation, under previous decisions of this court, would not control or supersede the one actually made in open court on the preceding day. To hold otherwise would simply mean that after a clear and certain order had been made in open court and correctly recorded in the court minutes, such order could later be substantially changed by the trial judge, notwithstanding district court rule XLV, without a hearing and without notice to anybody, by the mere signing and filing of a formal written order. An order made in open court is of as much force and effect as one made by written memorandum. Carter v. J. W. Silver Trucking Co., 4 Cal. 2d 198, 47 P. 2d 733. And while in some states orders must be signed by the judge, such is not the law in Nevada. What was actually decided on December 9 is the important thing, and the order made from the bench on

that day could not later be substantially changed, without notice or hearing, by the mere signing of a written decision howsoever formal. If the written order of December 10 should be construed to mean that the trial court reserved the right to make additional allowances in the future for services performed in 1941, such reservation would constitute a substantial change in the order actually made the preceding day—a change which the trial court would be without power or jurisdiction to make. Rico Consol. Min. Co. v. Rico Exploration Co., 23 Ariz. 389, 204 P. 138.

A written order will not always prevail over a minute order. Where there is conflicting evidence as to what was actually ordered there is some reason for saying that a written order will prevail over a minute order, provided the former is itself clear in its language and free from ambiguity, and provided further that there be no other evidence of more cogent force than the written order. After all, the written order as well as the minute order are simply evidence as to what was actually decided. Where all the evidence shows clearly that the minute order correctly records what was actually ordered, the written order will not prevail. It is not at all necessary that there be formal orders in cases of this kind. Very often formal orders are not filed, and while it is commendable practice to follow the minute entry with a formal order signed by the judge, such practice is not required by any statute or court rule in this state. In a number of western states the judgment of the court is not, as in Nevada, the pronouncement from the bench. In Washington, for example, the supreme court says that "the formal judgment as entered is the judgment of the court irrespective of memorandum opinions or minute entries." Landry v. Seattle, P. A. & W. R. Co., 100 Wash. 453, 171 P. 231, 232. Two of the cases cited in support of this proposition are Jensen v. Bell and Gould v. Austin, relied on by appellant in this case. Thus the Washington cases

are not only distinguishable for the reason stated in the Nevada case of Silva v. Second Judicial District Court, but also because of the rule announced in Landry v. Seattle, P. A. & W. R. Co., supra. It is noteworthy also that in the case of McFadden v. McFadden, 22 Ariz. 246, 196 P. 452, the supreme court of Arizona, in laying down the rule that where there is conflict between the entry made by the clerk in the minutes and the solemn judgment of the court, the terms of the latter should be given force and effect, rather than of the former, cites only Washington cases which, for reasons stated herein, are not applicable in this jurisdiction.

In speaking of the minute entry of December 9 and the formal order of December 10, it is not to be understood that the court made two final orders relating to compensation for 1941 services. There could not be two such final orders any more than there can be two final judgments in the same action. Nevada First Nat. Bank v. Lamb, 51 Nev. 162, 271 P. 691; Low v. Crown Point Min. Co., 2 Nev. 75. The actual adjudication now under consideration became final when the order was announced in court on December 9. If the written order of December 10 does not, to use the language of the Silva case, correspond with the pronouncement from the bench on December 9, then insofar as it substantially changes the latter, it is void.

In Colorado the rule has been enunciated that the formal record entry of a judgment is binding, until corrected, though different from the judgment actually pronounced or inconsistent with a memorandum opinion or minute entry. Forker v. Hopkins, 64 Colo. 325, 171 P. 361; Bates v. Hall, 44 Colo. 360, 98 P. 3. These cases were both decided under a special statute, the Colorado irrigation act, which provides that the district court shall "cause to be entered a decree determining and establishing the several priorities of right, by appropriation of water. * * *." 3 Colorado Statutes, Annotated (1911), sec. 3284; 4 Kinney on Irrigation and Water Rights, Second Ed., secs. 1791, 1792. To apply

such a rule in the case at bar would be giving the written order of December 10 a status which it does not have under the decisions of this court, or under any statute or court rule in this state. Such a holding would in effect make the written order, rather than the pronouncement from the bench, the final order of the court. Suppose, in this case, the hearing on December 9 had been reported by the official reporter of the district court, and his or her notes showed that the order actually rendered by the court on December 9 was in all respects correctly recorded in the minute entry of that date; if the rule in the Colorado irrigation cases were to be applied in such a situation, the order of December 10 would be conclusive evidence of what was actually decided by the court on the previous day, notwithstanding the other evidence showed conclusively, as a matter of fact, that the actual order was as recorded in the minute entry.

The formal order of December 10 was not corrected in the lower court, and because of this it is said that this court is without power to correct it. The question before us, however, is not whether this court can correct the order of December 10 or direct the lower court to do so; the real question is, what order was actually made on December 9? In order to determine the latter question this court, in my opinion, has the power to construe the written order, regardless of whether it can correct that order or direct the trial court to do so. More than one-third of the reply brief is devoted to the proposition that the written order should prevail over the minute order; yet appellant, whose ability is unquestioned, does not advance the argument that the written order must be accepted as final because neither plaintiff nor the present receiver asked the lower court to correct it. And why was it incumbent on either of them to do so? Plaintiff naturally would not ask to have it corrected, because he maintains that it means the same as the minute order; and the present receiver relies upon the rule laid down in a long line of Nevada cases,

that the judgment as pronounced from the bench is the final judgment, not the formal judgment as entered, as held in Washington and some other states. It may be noted here that although appellant was in court when the order of December 9 was made, he has never made any attempt to have the minute order of that date corrected. It would have saved considerable trouble if these matters had been straightened out in the trial court, but the fact that they were not should not prevent this court from placing a proper construction on the written order of December 10; and in any event there is no more, if as much, reason why plaintiff or the present receiver should have asked for a correction of the written order than appellant for a correction of the minute order. The order actually made in open court and correctly recorded in the minutes was the final order in this matter, not the written order of December 10. Again, if appellant's construction of the written order is correct, then, as has been pointed out, that portion of said order which makes a substantial change in the order of December 9 is void, and this court should not therefore be bound by it whether corrected or not.

Much of what has been said is based upon the assumption, made for purposes of discussion only, that the order of December 10 is free from ambiguity and that appellant is correct in his construction of that order. It is clear that if the written order is ambiguous, neither the rule that where there is a conflict between a minute order and a written order the latter will prevail, nor the other rule that if a written order is not corrected in the lower court it will be binding on this court, is applicable here.

The writer does not agree with appellant's contention that the formal order of December 10, 1941, should be construed as reserving in the trial court the right to make additional allowances in the future for services performed in 1941. The more natural meaning of this order is that the reservation relates to allowances to be

made for services to be performed in the future. Conceding, however, that said order may also bear the construction placed upon it by appellant, we then have a manifestly ambiguous order, though it could very easily have been worded so as to be plain and clear in its meaning, one way or the other. On the one hand, by reason of the words "for the calendar year 1941" and the expression "when the proper occasion should arise," the reservation in the order can reasonably and naturally be read as relating only to allowances for services to be performed in the future. On the other hand, by reason of the words "subject to the right reserved by said Court to consider the matter of any additional allowance," it is possible to construe said reservation as relating to further allowances for services performed in 1941.

Where an order or judgment is ambiguous in its terms, the whole record may be examined to remove the doubt. This is the rule in Nevada, as well as in most other jurisdictions. Aseltine v. Second Judicial District Court, 57 Nev. 269, 273, 62 P. 2d 701; Roraback v. Roraback, 38 Cal. App. 2d 592, 101 P. 2d 772; Vasiljevich v. Radanovich, 138 Cal. App. 97, 31 P. 2d 802; Watson v. Lawson, 166 Cal. 235, 135 P. 961; Atlantic, Gulf & Pac. Co. v. Wright, 11 Cal. App. 179, 104 P. 460; 14 Cal. Jur. 959; George v. Jenks, 197 Wash. 551, 85 P. 2d 1083; Evans v. City of American Falls, 52 Idaho 7, 11 P. 2d 363; Quigley v. McIntosh, 110 Mont. 495, 103 P. 2d 1067; Hale v. Independent Powder Co., 46 Okl. 135, 148 P. 715; Reaves v. Turner, 20 Oky. 492, 94 P. 543; In re Kehl's Estate, 215 Wis. 353, 254 N. W. 639; Upton v. Merriman, 122 Minn. 158, 142 N. W. 150; Whaley v. Matthews, 136 Neb. 767, 287 N. W. 205; Sutton v. Schnack, 224 Iowa 251, 275 N. W. 870; State ex rel. Booth v. Beck Jewelry Enterprises, 220 Ind. 276, 41 N. E. 2d 622, 141 A. L. R. 876; Hofer v. Hofer, Ohio App., 42 N. E. 2d 165; Freeman on Judgments, Fifth Ed., secs. 76, 77; Black on Judgments, Second Ed., sec.

123; 15 Standard Encyc. of Proc. 93, n. 27; 3 Bancroft's Code Pr. and Rem. 2273, 2274, n. 12.

It may be said that the words "subject to the right hereby reserved" imply that the reservation relates to further allowances for the year 1941, because why should the court do a vain thing by reserving a right which it unquestionably has without the making of such a reservation? But it will be observed that the same type of expression was used in the minute order, which beyond all doubt relates to allowances for future services only. It is evident that the trial court "reserved the right" to do things which it had the power to do in any event, as well as things which it might not have power to do without the making of such reservations. If, after the word "allowance," the words "for services to be performed in the future" or the words "for said year" or "for said year 1941" had been inserted, the formal order would have been plain and unambiguous, notwithstanding its meaning would have been entirely different depending on which words were inserted. In either event there would have been no room for construction.

In the State of Washington where, under some circumstances, a minute order is superseded by a later written order (State v. Bell, supra), it is equally well settled that where a judgment is ambiguous, resort may be had to the entire record to remove the ambiguity (George v. Jenks, supra). What we have in the case at bar is a minute order, entirely free from ambiguity and correctly recording the order made in open court, followed by an ambiguous formal order which, if no reference be made to other parts of the record, can be interpreted as having precisely the same meaning as the minute order, but may also admit of other and different interpretations. In such a situation I am satisfied that the written order should be construed to harmonize with the plain and certain meaning of the minute order. As indicated in the Silva case, it should correspond with the pronouncement from the bench.

Where there is ambiguity, as in the formal order of December 10, the court should endeavor to ascertain the real intention of the author of the order. As said in Aseltine v. Second Judicial District Court, supra [57 Nev. 269, 62 P. 2d 702], "In other words, was it the intention that the judgment and decree might be modified in accordance with the provision relative to a reduction of the allowance to the plaintiff?" That "the court's real intention" should be inquired into is recognized in State v. Bell, heretofore mentioned in this opinion. And in Cundy v. Weber, S. D., 300 N. W. 17, 21, the Supreme Court of South Dakota said: "The function of the process of construction is to determine the intention and meaning of the author of a judgment or other instrument." In the present case the real intention of the written order cannot possibly be determined without reference to other parts of the record; but when such reference is made, the intention becomes clear.

It is true that the question of ambiguity in the order of December 10 has not been raised by counsel on this appeal, unless by implication when counsel for plaintiff stated that the minute order is unequivocal. That the question was not directly raised is quite understandable. Plaintiff naturally would not raise it because, as we have seen, it contends that the order means the same as the minute order. That the present receiver has not raised the question may be accounted for by the fact that in support of his contention that the order allowing compensation for 1941 services was a final order, he relies upon the Nevada decisions hereinbefore mentioned.

The contention that the order of December 1941 was a final one is supported by a further consideration appearing in the record. In support of the application made in the fall of 1941 for an order allowing attorney's fees, appellant was permitted to and did make a very full showing. His direct testimony alone fills twenty-seven pages of the record. He does not contend that he overlooked anything in giving that testimony, which was

first carefully reduced to writing before being read in court. The trial court thus had before it all the evidence that appellant desired to offer. On that showing the court allowed $3,000 for appellant's services "for the calendar year of 1941." Under these circumstances what occasion would be likely to arise in the future calling for the making of any additional allowances for services performed in 1941? The implication seems clear, from the use of the words "when the proper occasion should arise," that possible litigation or other matters requiring extraordinary services was intended by the expression "proper occasion."

At the hearing on January 29, 1943, the trial court allowed testimony relating to appellant's services before, as well as during the year 1942. Does this show that the court placed the same construction on the signed order of December 10 as that contended for by appellant? I think not, for at least two reasons. First, testimony covering 1940 was permitted, as well as 1941 and 1942; yet no one contends that the trial court or any one else ever considered the order for 1940 services other than final, or that the allowance for those services was not in full. Second, one of the grounds of appellant's motion to vacate was based on the proviso in the written order of December 10, 1941. It was the court's duty to consider this as well as the other grounds upon which the motion was based. It was natural, therefore, to permit testimony covering the 1941 services because, if appellant could convince the court that the 1941 order was not final, then the court would want to consider the testimony relating to the services performed during that year as well as in 1942.

It is not necessary, of course, that orders such as that under consideration be made orally in court. Such orders, as well as judgments, may be made or rendered in writing, signed by the judge and filed with the clerk. Had the order fixing the 1941 allowance been made in this way, it would have been of the same force and effect as one pronounced from the bench and correctly recorded

in the minutes; but the court, without notice or hearing, could not have legally made any substantial change in such formal order, either by an amended written order or by oral pronouncement in open court.

For the reasons given it is my opinion that the formal order of December 10, 1941, as well as the order of December 5, 1940, was a final order, and that the allowance made therein was in full for appellant's services performed during the calendar year 1941. No appeal having been taken by him from either of said orders within the time prescribed by law, he is, in my opinion, concluded by them. 53 C. J. 379, n. 39.

There remains for consideration the question whether the trial court abused its discretion in not allowing appellant more than $2,500 for his services performed during the first ten months of 1942. The order making this allowance was made by the court of its own motion on December 11, 1942. The reasons given by the judge for making the order at that time without first having a hearing after due notice are sufficient, in my opinion, to show that the court did not take such action through any intentional arbitrariness. Nevertheless I think the order was erroneous at least, if not void. State v. Wildes, 37 Nev. 55, at page 69, 139 P. 505, 142 P. 627; Heater v. Boston Montana Corporation, 75 Mont. 532, 244 P. 501; In re Magner, 173 Iowa 299, 155 N. W. 317; Merchants' Bank v. Crysler, 8 Cir., 67 F. 388; Ritter v. Arizona Cattle Co., 34 Ariz. 278, 271 P. 25; First Nat. Bank v. Stewart Fruit Co., D. C., 17 F. 2d 621; Colkett v. Hammond, 101 Wash. 416, 172 P. 548; Ruggles v. Patton, 6 Cir., 143 F. 312; 1 Clark on Receivers, Second Ed., sec. 642(i) ; High on Receivers, Fourth Ed., p. 959, n. 75.

In his notice of motion to vacate the order of December 11, appellant stated that he desired to submit evidence as to the value of his services and as to a reasonable fee to be fixed and allowed therefor. In the same document he gave notice that at the time of presenting said motion to vacate he would also move the

court "for an order fixing a day certain for the hearing of the matter of the determination of a reasonable fee to movant for his services, as aforesaid." At the hearing on January 5, 1943, appellant informed the court that if the motion to vacate should be granted, he would like to have the hearing of his application for increased compensation fixed for January 29, 1943. At said hearing on January 5, 1943, the court erroneously declined to set aside the order of December 11, 1942, but at the same time said: "However, as I say, Mr. Badt, if you feel that you have been treated unfairly or unjustly in this matter, I am willing to give you full opportunity to present any proof that you have that would justify an increase in the attorney fee but I do not feel on the showing made at this time that this order should be vacated in view of the fact that there are very respectable authorities who hold that the court is not required to take any testimony. So it will be the order that the order will stand at this time fixing the attorney fee, but it will be further ordered that a day will be set fixing a time when Mr. Badt will be given an opportunity to present proof to show that the attorney fee is unjust or unreasonable."

The court proceeded to set January 28, 1943, as the day for this hearing, and then, upon appellant's application, changed the date to January 29, 1943. On January 8, 1943, the court signed and filed a written order made pursuant to the minute order of January 5. Omitting the preliminary recitals, the first two paragraphs of this order read: "1. That, pending the further order of this court, the motion to vacate said order of December 11, 1942, so far as the same pertains to the fixing of attorney fees, be and the same hereby is denied. 2. That the motion to fix a day certain for the hearing of the determination of reasonable attorney fees in the premises be and the same hereby is granted, and that Friday, the 29th day of January 1943 at ten o'clock A. M. (following the hearing of the Receiver's next account, also to be set for said date) is hereby fixed as

the time and place at which the movent, Milton B. Badt, may present proof to show that the attorney fee heretofore fixed and allowed was unjust or unreasonable, or that any additional allowance should be made." Pursuant to the court's direction, appellant served notice of said hearing on all parties concerned, and when the matter came on for hearing on January 29, 1943, appellant, addressing the court, said, "May it please the Court, this was the time set for the hearing of my own application for allowance of additional attorney fees. * * * At this time, with the Court's permission, I shall testify from my typewritten pages if I may be sworn." Appellant then proceeded to testify at length, and called three outstanding attorneys as experts who also testified in his behalf. At the conclusion of the January 29 hearing the court took appellant's motion under submission, and on February 27, 1943, after first stating its reasons, ordered "that the said order entered by this Court on December 11, 1942, will stand as entered."

If appellant had appealed from the order refusing to set aside the order of December 11, 1942, and had declined to take advantage of the opportunity given him to be heard on January 29, 1943, I would agree that there should be a reversal and the case sent back so that the trial court, after due notice and hearing, could fix a reasonable amount in compensation for the services rendered by appellant in 1942. Such was the action taken by the Supreme Court of Washington in Colkett v. Hammond, supra. But instead of following that course, appellant accepted the opportunity given him by the court to make a full showing, and not only testified at length himself but called three oustanding attorneys as experts who testified in his behalf. And he has asked this court, not to send the case back so the lower court can make a valid order in lieu of that of December 11, 1942, but to grant him, on this appeal, an increase in the amount of his compensation. Under these circumstances, while it may be that the order of December 11,

1942, should not be regarded as having been validated by the subsequent proceedings, the form of the order of February 27, 1943, should, in my opinion, be disregarded insofar as it purports to provide that the order of December 11 stand. The hearing on January 29, 1943, was had after due notice given to all parties concerned, and was referred to by appellant himself as "the hearing of my own application for allowance of additional attorney fees." The order made on February 27, 1943, should therefore, I think, be regarded as a valid, final order, fixing the amount of appellant's compensation for his services performed in 1942. As I view the matter, appellant is entitled to have the court, on this appeal, determine whether the trial court abused its discretion in not fixing a higher amount than $2,500 for those services.